Filed 8/27/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re GREG F., a Person Coming Under the Juvenile Court Law.<br>_____ | ) ) ) | |
| | ) | |
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S191868 |
| v. | ) | |
| | ) | Ct.App. 1/5 A127161 |
| GREG F., | ) | |
| | ) | Sonoma County |
| Defendant and Appellant.<br>_____ | ) ) | Super. Ct. No. 35283J |

This case involves the interplay between two statutes governing juvenile delinquency dispositions. Welfare and Institutions Code section 733, subdivision (c) (section 733(c))**1** establishes a general rule that a ward cannot be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF), unless "*the most recent offense* alleged in any petition and admitted or found to be true by the court" (italics added) is one of the violent offenses listed in section 707, subdivision (b) (section 707(b)). On the other hand, section 782 provides that the juvenile court has the power to dismiss any wardship petition if "the interests of justice and the welfare of the minor require such dismissal."

---

**1** All unspecified statutory references are to the Welfare and Institutions Code.

1

These two provisions may both come into play when a ward on probation for a DJF-eligible offense commits a new offense that is not listed in section 707(b). If the prosecution files a notice of a probation violation under section 777 (777 notice), the court has the power to revoke the ward's probation and commit the ward to DJF. However, if the prosecution files a new section 602 petition (602 petition), the plain language of section 733(c) will prohibit the court from ordering a DJF commitment if the allegation is admitted or found true because the new offense is the "most recent offense alleged in any petition" and is not DJF eligible. The question arises whether, under these circumstances, the juvenile court may use its broad discretion under section 782 to dismiss the second petition so that the matter can be treated as a probation violation, allowing the ward to be committed to DJF. Based on the plain language of the statutes, legislative history, and the policies served by the juvenile court law, we conclude the court has that discretion.

## I. BACKGROUND

A. *September 2008 Assault on Joseph C.*

On September 16, 2008, 11-year-old Joseph C. was riding his bicycle in Santa Rosa when a car stopped next to him. The minor, Greg F., and two other boys jumped out, yelling Norteño gang slogans and displaying gang hand signs. The minor hit Joseph on the head with a baseball bat, knocking him off his bicycle. The minor tried to take the bicycle, but Joseph clung to it. Joseph was airlifted to the hospital and underwent surgery. He was hospitalized for seven days and suffered lingering neurological damage.

The ensuing 602 petition alleged the minor had committed assault with a deadly weapon and by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)), had personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)), and had acted for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)). The minor admitted each of the allegations, and the petition was sustained. Because "[a]ssault by any means of force likely to

2

produce great bodily injury" is one of the offenses listed in section 707(b), the minor was eligible for a DJF commitment.  (§ 707, subd. (b)(14); see § 733(c).)  The maximum term was 17 years.

The probation department unanimously recommended a commitment to DJF based on "the minor's callous act of violence upon a young victim, who continues to be emotionally and physically [a]ffected by the minor's actions, the minor's lack of remorse for the victim, and the risk he poses to the community." Due to the severity of his offense, the minor was not considered a suitable candidate for the department's placement services.  Moreover, the department believed DJF could best provide him with "appropriate and necessary treatment and rehabilitation services."  The juvenile court declared the minor a ward of the court but rejected the probation department's recommended disposition and instead ordered an out-of-home placement.  This placement was terminated after five months because the minor refused to participate in treatment.  Staff voiced concern over the minor's entrenched gang involvement and lack of empathy for his victim.  On June 11, 2009, the minor was detained in juvenile hall pending identification of another suitable placement.

B.  *August 2009 Battery in Juvenile Hall*

On August 16, 2009, during dinner at the juvenile hall, the minor and two other Norteño gang members suddenly stood up and attacked three Sureño gang members sitting nearby.  Punches were exchanged.  Juvenile hall staff members were initially unable to break up the fight.

The district attorney filed a new 602 petition on August 18, 2009, alleging the minor had committed two offenses:  (1) battery for the benefit of a gang (Pen. Code, §§ 186.22, subd. (d), 242); and (2) knowing participation in a gang (Pen. Code, § 186.22, subd. (a)).  Neither offense is "described in subdivision (b) of Section 707."  (§ 733(c).)  At the detention hearing the next morning, the minor admitted the battery offense and associated gang enhancement.  In return, the

district attorney dismissed the gang participation count. The juvenile court accepted the admission and set the matter for a disposition hearing.

Three days later, with the probation officer's concurrence, the district attorney filed an ex parte request to calendar a motion to "withdraw" the minor's plea. The following Monday, the prosecutor filed a notice of probation violation under section 777, based on the assault in juvenile hall. The prosecutor admitted having filed the 602 petition in error, rather than proceeding by way of a probation violation. He asked the court to withdraw the minor's plea and strike the petition, explaining that the prosecution was "trying to get to a [DJF-eligible] offense" related to the prior petition because of the probation department's concerns. In particular, he noted, "there aren't any placements that are willing to accept Greg and we don't have anywhere to put him." With the court's permission, the prosecutor filed a formal motion to set aside the minor's admission and dismiss the August 18, 2009 petition. After full briefing and argument, the court granted the motion, dismissing the August 18, 2009 petition in the interests of justice and the minor's welfare. (§ 782.) The court explained that it dismissed the new 602 petition to create the "best options" for disposition.

The minor subsequently admitted the section 777 probation violation. The court referred the matter to probation for an updated recommendation on disposition. The matter was continued several times to determine whether the minor could be successful in juvenile hall or in another placement short of DJF. When the disposition hearing was held on February 3, 2010, the probation officer reported that the minor had been involved in yet another assault on a rival gang member in juvenile hall. Moreover, in light of his gang involvement and violent behavior in juvenile hall, none of the placement programs the probation officer had contacted were willing to accept the minor. The court committed the minor to DJF and set the maximum term of confinement at 17 years.

This dispositional order was reversed on appeal. The Court of Appeal held that section 733(c) limits a juvenile court's authority to dismiss a petition under

4

section 782, and the court could not commit the minor to DJF based on the August 18, 2009 petition.  In reaching that conclusion, the appellate court agreed with *V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455 (*V.C.*) and rejected the contrary reasoning in *In re J.L.* (2008) 168 Cal.App.4th 43 (*J.L.*).  We granted review to resolve the conflicting case law.  We now hold that section 733(c) does not deprive the juvenile court of its discretion to dismiss a 602 petition and commit a ward to DJF when, in compliance with section 782, such a dismissal is in the interests of justice and for the benefit of the minor.

## II.  DISCUSSION

The minor argues the juvenile court lacked authority to dismiss his 602 petition for two reasons.  First, he asserts the limitation on DJF commitments in section 733(c) is a more specific, later-enacted statute that overrides section 782.  Second, he contends section 782 may only be used to terminate jurisdiction over a minor.  Because the dismissal here was used to "reach back" to an earlier petition and commit an otherwise-ineligible ward to DJF, the minor claims the dismissal was not "in the interests of justice," as required by section 782.  We reject both of these arguments.

A.  *Summary of Juvenile Delinquency Proceedings*

Although juvenile delinquency proceedings have been called "quasi-criminal" (*Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, 801), we have also observed that they are " 'fundamentally different' from adult criminal proceedings" and require "that a 'balance' be struck between the 'informality' and 'flexibility' " necessary in juvenile proceedings and attention to the juvenile's constitutional rights.  (*Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1215.)  One important difference between juvenile delinquency and adult criminal proceedings is the speed with which juvenile proceedings must begin and progress.  (See *id*. at p. 1216.)  Much must be completed in a narrow timeframe.

When there is reasonable cause to believe a minor has violated a law defining a crime, law enforcement may take the minor into temporary custody.

5

(§§ 602, subd. (a), 625, subd. (a).)  If the minor is detained, law enforcement must deliver the minor "without unnecessary delay" to the probation officer in an appropriate county (§§ 626, subd. (d)), 626.5, subd. (b)) and provide the probation officer with incident reports (§§ 626, subd. (c), 626.5, subd. (a)).  The probation officer must "immediately investigate the circumstances of the minor and the facts surrounding his or her being taken into custody" and determine if continued detention is necessary.  (§ 628, subd. (a); see § 628.1.)  If the probation officer determines that the minor is already a ward of the juvenile court, the officer can file a 777 notice.  (§ 777, subds. (a), (b).)  If the minor is not a ward and the probation officer determines that delinquency proceedings should be initiated, the officer refers the matter to a prosecuting attorney for the filing of a 602 petition. (§§ 630, 650, 653.5, subd. (b).)

If a 777 notice or 602 petition is not filed within 48 hours (excluding noncourt days) after the minor was taken into custody, the minor must be released. (§ 631, subd. (a); *In re Daniel M.* (1996) 47 Cal.App.4th 1151, 1154-1155; Cal. Rules of Court, rule 5.752(b).)  A detention hearing must be held by the next judicial day after a petition or notice is filed.  (§ 632, subd. (a).)  At the detention hearing, the court reviews the probation officer's report to determine whether continued detention of the minor is necessary.  (§ 636; Cal. Rules of Court, rule 5.760.)

The next step following a 602 petition is the jurisdictional hearing, at which the court decides whether a crime has been committed.  (§ 701.)  Offenses alleged in the 602 petition must be proven true "beyond a reasonable doubt" and be "supported by evidence[] legally admissible in the trial of criminal cases."  (§ 701; accord, *In re Eddie M.* (2003) 31 Cal.4th 480, 487.)  If the minor is detained, the jurisdictional hearing must be held within 15 judicial days after the detention order.  (§ 657, subd. (a)(1).)  As in this case, the minor may admit the allegations in the 602 petition at the detention hearing and waive further jurisdictional proceedings.  (§ 657, subd. (b).)

6

Once jurisdiction on a 602 petition is established, the case proceeds to a dispositional hearing.  At this hearing, the court considers the probation officer's social study and other evidence to determine an appropriate disposition.  (§ 706.)  In reaching a disposition, the court considers (1) the minor's age, (2) the circumstances and gravity of the offense, and (3) the minor's previous delinquent history.  (§ 725.5.)  The court may place the minor on probation, with or without declaring the minor a ward of the court, or it may declare the minor a ward and order appropriate treatment and placement.  (§§ 725, 726.)  Placement options include the home of a relative or extended family member; a suitable licensed community care facility or foster home; juvenile hall; a ranch, camp or forestry camp; and, the most restrictive setting, DJF.  (§§ 727, subd. (a), 730, subd. (a), 731, subd. (a)(4).)  The court can also set aside the jurisdictional findings and dismiss the petition if it finds that the interests of justice and the welfare of the minor require a dismissal, or if it finds that the minor is not in need of treatment or rehabilitation.  (§ 782.)

B.  *Section 733(c) Does Not Deprive the Court of Its Discretion Under Section 782*

Section 733(c)'s commitment limitation provides that a juvenile ward may not be committed to DJF if "[t]he ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707 [violent felony offenses] . . . [or] subdivision (c) of Section 290.008 of the Penal Code [sex offenses]."  Thus, a DJF commitment must be based on a recent violent offense or sex crime adjudicated in a delinquency petition.  It cannot be ordered based on a past offense in the ward's juvenile record if the ward's most recent offense does not qualify.

Because section 733(c)'s commitment limitation depends on the nature of "the most recent offense alleged in any *petition*" (italics added), the statute does not bar DJF commitments imposed for probation violations on qualifying offenses.

7

(*In re D.J.* (2010) 185 Cal.App.4th 278, 286; *In re M.B.* (2009) 174 Cal.App.4th 1472, 1476; *J.L.*, *supra*, 168 Cal.App.4th at p. 60.)  When the voters enacted Proposition 21 in 2000, they replaced the supplemental petition procedure formerly used under section 777 with a notice provision.  (*In re Eddie M.*, *supra*, 31 Cal.4th at pp. 489, 491.)  Thus, a probation violation procedure is initiated under section 777 by the filing of a *notice*, not a petition.  (*J.L.*, at pp. 58-59.)  Significantly, a probation violation proceeding involves a different standard of proof than a section 602 proceeding, and it does not result in the charging or adjudication of a criminal offense, even if the conduct alleged is criminal.  (*In re Eddie M.*, at p. 506; *J.L.*, at pp. 59-60.)  Moreover, if a violation is established, the most restrictive placement the court can impose is the maximum term of confinement on the original offense for which the ward was placed on probation.  (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 165.)

In June 2009, Greg F. was placed on probation and detained in juvenile hall.  The maximum term of confinement for his violent, gang-motivated assault on Joseph C. was 17 years.  Just two months later, the minor committed a second, although less violent, assault on rival gang members in juvenile hall.  This second offense could have been alleged in a 777 notice and treated as a probation violation.  Had the district attorney followed this course, the minor does not dispute that he could have been committed to DJF for up to 17 years as punishment for the original offense.  If a ward's most recent offense is alleged in a 777 notice, as opposed to a 602 petition, section 733(c) does not apply.  However, the prosecutor mistakenly brought the minor's new offense before the court in a 602 petition rather than a 777 notice.  The question now is whether the trial court had discretion to dismiss the 602 petition, after the minor had admitted the non-DJF-eligible offense there alleged, and treat the matter as a probation violation.

"Juvenile courts have long had the authority to dismiss juvenile matters at the disposition stage of proceedings.  (*In re W.R.W.* (1971) 17 Cal.App.3d 1029, 1036.)  Such authority was statutorily expressed between 1915 and 1961.  (*Ibid*.)

8

When the entire juvenile court law was repealed and recodified in 1961, without enactment of a general dismissal provision, the reviewing court in *In re W.R.W.* concluded juvenile courts nevertheless properly continued the practice of exercising discretion to dismiss juvenile matters. (*Ibid*.) It noted: 'The [juvenile] court is accorded great discretion in its disposition of juvenile matters. It may at any time modify or vacate a dispositional order and may entirely terminate its jurisdiction when it is satisfied that further supervision is unnecessary [citations]. It would be inconsistent with the liberal termination provisions and the general thrust of the juvenile court law to hold that the referee, at the time of original disposition, could not dismiss the case if he felt that court supervision would be unnecessary and perhaps harmful.' (*Id*. at p. 1037, fns. omitted.) Shortly after the decision in *In re W.R.W.*, 'the Legislature drafted section 782, restoring to the juvenile law the clear power of the court to dismiss juvenile petitions in the interests of justice.' (*Derek L. v. Superior Court* (1982) 137 Cal.App.3d 228, 232 . . . .)" (*V.C.*, *supra*, 173 Cal.App.4th at pp. 1463-1464, fn. omitted.)

Section 782 describes the juvenile court's discretion to dismiss delinquency petitions. It states, in relevant part: "A judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require such dismissal, or if it finds that the minor is not in need of treatment or rehabilitation." (§ 782.)

Determining whether the commitment limitation of section 733(c) prevails over the dismissal discretion granted by section 782 requires analysis of these statutes in accordance with long-standing principles of interpretation. Our fundamental task in construing a statute "is to ascertain the Legislature's intent [and] effectuate the law's purpose. [Citation.] We begin our inquiry by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] In doing so, however, we do not consider the statutory language 'in

9

isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.] We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend. [Citations.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 907-908.)

### 1. *Statutory Language*

Nothing in the language of section 733 indicates that the Legislature intended this provision to override the juvenile court's discretion to dismiss a petition when dismissal is in the interests of justice and for the welfare of the minor. (§ 782.) Section 733(c) does not mention section 782, nor does it state that its provisions prevail over section 782, or any other law. When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like "notwithstanding any other law" or "notwithstanding other provisions of law." (See *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 995; *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 386.) The Legislature did not include this language in section 733(c), nor did it amend section 782 to prohibit dismissals to permit a DJF commitment.

The absence of such an express limitation on the juvenile court's power under section 782 is significant. The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute. (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780, fn. 3; *In re Michael G.* (1988) 44 Cal.3d 283, 293.) " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the

10

aspects not amended.' [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838.) For over 40 years, section 782 has given juvenile courts the power to dismiss a delinquency petition if doing so serves the interests of justice and the welfare of the minor. (Stats. 1971, ch. 607, p. 1211, § 1.) If the Legislature had intended to deprive courts of this long-held discretionary power when a dismissal would conflict with section 733(c), it could have easily made this intent plain. It did not.

The minor argues that section 733(c) must prevail over section 782 because it is the more specific and later-enacted statute. However, this argument has two flaws. First, even under his reading of the statute, the minor concedes that a limitation on discretion must be implied. Section 733(c) is not more specific than section 782 on this point. Indeed, it does not mention a limit on section 782 discretion at all. " 'An implied amendment is an act that creates an addition, omission, modification or substitution and changes the scope or effect of an existing statute.' [Citation.] Amendments by implication are disfavored and should 'be employed frugally, and only where the later-enacted statute creates such a conflict with existing law that there is no rational basis for harmonizing the two statutes, such as where they are " 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. . . .' " [Citation.]' [Citation.]" (*In re Sean W.* (2005) 127 Cal.App.4th 1177, 1187.) Second, the two provisions are not irreconcilably in conflict. As we have noted, " '[t]he principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled. [Citations.]' [Citation.] If we can reasonably harmonize '[t]wo statutes dealing with the same subject,' then we must give 'concurrent effect' to both, 'even though one is specific and the other general. [Citations.]' [Citation.]" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478.) " 'The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' [Citations.]" (*In re Gladys R.* (1970) 1 Cal.3d 855, 863.)

11

Sections 733(c) and 782 *can* be harmonized. Section 733(c) prohibits a commitment to DJF unless the minor's most recent offense alleged in a petition is of a particular class. If the juvenile court exercises its discretion under section 782 to dismiss a 602 petition, its decision does not nullify or abrogate section 733(c). It simply changes the "most recent offense alleged in any petition" to which section 733(c) applies *in that particular case*. In a great many cases, the minor's DJF eligibility will be based on the most recent offense alleged in a new 602 petition, in accordance with section 733(c). However, if the minor has been given an opportunity to benefit from probation after committing a DJF-eligible offense, and then goes on to commit a new offense while on probation, the interests of justice and the welfare of the minor may be best served by a DJF commitment. Section 782 gives the juvenile court a discretionary tool in such cases to control the operative petition for purposes of section 733(c) and, consequently, expand its dispositional options. Allowing section 782 dismissals in the interests of justice and for the minor's welfare thus gives effect to *both* statutes.

Nor would allowing discretionary dismissals under section 782 frustrate the legislative purposes behind section 733(c). Section 733(c) simply provides that a minor may not be committed to DJF if the most recent offense *admitted and found true following a 602 petition* is not a qualifying offense. It cannot be ordered based on a past offense in the minor's juvenile record if the minor's recent offenses are nonviolent. As noted, however, because section 733(c) speaks to conduct alleged in a "petition," it does not prohibit the court from ordering DJF commitments for probation violations on qualifying offenses. (*In re D.J.*, *supra*, 185 Cal.App.4th at p. 286; *In re M.B.*, *supra*, 174 Cal.App.4th at p. 1476; *J.L.*, *supra*, 168 Cal.App.4th at p. 60.) Having granted the minor leniency by placing him on probation for a DJF-qualifying offense, the court retains discretion to impose a DJF commitment if the minor violates that probation. The availability of that option provides an important incentive for the minor to reform.

12

## 2. *Legislative History*

Construed in light of standard principles of interpretation, the meaning of section 733(c) is clear, and there is no need to resort to legislative history. (See *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063.) We have examined the legislative history underlying section 733(c), however, and found nothing to suggest that the Legislature intended to deprive juvenile courts of their long-standing discretion to dismiss delinquency petitions when appropriate.[2]

Section 733(c) was enacted as part of the 2007 realignment legislation. (*In re N.D.* (2008) 167 Cal.App.4th 885, 892; *V.C.*, *supra*, 173 Cal.App.4th at pp. 1468-1469.) The overarching purpose of Senate Bill No. 81 (2007-2008 Reg. Sess.), which added section 733, was to make "necessary statutory changes to implement the Budget Act of 2007." (Stats. 2007, ch. 175, § 38.) A report of the California Little Hoover Commission explains the history behind these budgetary measures: "To settle a lawsuit brought on behalf of inmates of state juvenile facilities, the state entered into a consent decree in November of 2004. The cost of compliance with the consent decree proved to be high: 'Realizing the state could not afford to comply with the . . . consent decree, in 2007, policy-makers acted to reduce the number of youth offenders housed in state facilities by enacting realignment legislation which shifted responsibility to the counties for all but the most serious youth offenders. . . .' (Little Hoover Com., Juvenile Justice Reform: Realigning Responsibilities (July 2008) pp. i-ii <http://www.lhc.ca.gov/lhcdir/192/report192.pdf> . . . .)" (*In re N.D.*, at pp. 891-892.)

One aspect of Senate Bill No. 81 was to "stop the intake [to DJF] of youthful offenders adjudicated for non-violent, non-serious offenses (non-707b offenses) . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen.

---

[2]    At the People's request, we have taken judicial notice of the legislative histories surrounding the enactment of sections 733 and 782. At the minor's request, we have also taken judicial notice of legislative history materials concerning a predecessor to the bill that enacted section 782. (See *post*, fn. 5.)

13

Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007, p. 2.)  In the first budget year, this change was projected to reduce the average daily population in state juvenile institutions by 199 offenders and the average daily population on parole by 190 parolees.  (*Ibid*.)  "By transferring responsibility for some wards to county authorities, the state saved about $250,000 per ward per year.  [Citation.]  At the same time, the legislation compensated the counties for the additional wards for which they would be responsible under a formula based on a rate of $117,000 per ward per year.  [Citations.]"  (*In re N.D.*, *supra*, 167 Cal.App.4th at p. 892.)  In addition to these budgetary concerns, this realignment legislation responded to findings that better results could be obtained at the local level for nonviolent juvenile offenders.  An argument in support of Senate Bill No. 81 stated:  "Quite simply most counties do it better and for less cost.  The offenders that will be diverted are non-serious, non-violent, non[-]sex offender[] wards who likely can be better served in their communities closer to their existing support systems."  (Sen. Republican Fiscal Off., Analysis of Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended Apr. 19, 2007, p. 2.)

Section 733(c)'s limitation on juvenile offenders eligible for a DJF commitment was "motivated by a desire to reduce the cost and increase the effectiveness of juvenile confinement."  (*In re N.D.*, *supra*, 167 Cal.App.4th at p. 892.)  The legislative history consistently stresses that only wards who are *not currently violent* will be diverted from state to local responsibility.  There is no indication the Legislature ever considered the situation before us, in which an offender who is on probation for a recent serious and violent offense is brought before the juvenile court on a new petition alleging a non-DJF-eligible offense.  However, it is clear that the Legislature intended to preserve the possibility of DJF commitments for violent offenders and sex offenders.  In keeping with this clear legislative intent, it is not reasonable to interpret the realignment legislation as restricting the juvenile court's ability to order an appropriate disposition for such offenders.  Nothing in the legislative history surrounding the enactment of section

14

733(c) suggests the Legislature intended to strip juvenile courts of their long-held discretion to dismiss a delinquency petition when dismissal is in the interests of justice and for the minor's welfare. "We are not persuaded the Legislature would have silently, or at best obscurely, decided so important . . . a public policy matter and created a significant departure from the existing law." (*In re Christian S.* (1994) 7 Cal.4th 768, 782.)

### 3. *Policy Considerations*

The interpretation we adopt also avoids absurd and unreasonable consequences. In interpreting a statute, courts are obligated to "adopt a common sense construction over one leading to mischief or absurdity." (*In re Samano* (1995) 31 Cal.App.4th 984, 989.)

The minor complains that juvenile courts should not be able to circumvent section 733(c)'s restrictions on DJF eligibility by using a dismissal to "reach back" to an earlier delinquency petition. But section 782 can only be used to "reach back" and commit a minor to DJF if the minor is currently on probation for a DJF-eligible offense. Under these circumstances, no one disputes that if the prosecution files a 777 notice alleging a probation violation, the juvenile court can commit the minor to DJF as punishment for the original section 707(b) offense. (See *In re D.J.*, *supra*, 185 Cal.App.4th at p. 286; *J.L.*, *supra*, 168 Cal.App.4th at p. 60.) However, if the prosecution alleges the new offense in a 602 petition instead of a 777 notice, a commitment to DJF is potentially foreclosed because the new 602 petition becomes the relevant petition for determining the minor's "most recent offense alleged in any petition" for purposes of section 733(c). If the minor admits the non-707(b) offense before the prosecution reconsiders its decision, or has a chance to dismiss the 602 petition on its own motion, the plain language of section 733(c) prohibits the juvenile court from committing the minor to DJF.

It is evident, then, that the situation we are addressing often arises because the prosecution has simply filed the wrong piece of paper: a 602 petition instead of a 777 notice. Although not to be encouraged, occasional oversights such as this

15

understandably occur given the unusually short deadlines in juvenile delinquency matters. As discussed, a 602 petition or a 777 notice must be filed within 48 hours after a minor has been taken into custody, and a detention hearing must be held the next judicial day. (§§ 631, subd. (a), 632, subds. (a), (c).) A jurisdictional hearing is required within the next 15 judicial days. (§ 657, subd. (a)(1).) These strict deadlines leave the prosecution and probation department very little time to investigate the minor's criminal history before the current allegations are adjudicated or the minor has an opportunity to admit them. A minor can admit the allegations in a 602 petition at the detention hearing, which typically occurs just three days after he has been taken into custody.

Nothing in the language or legislative history of section 733 suggests the Legislature meant to deprive juvenile courts of the ability to impose DJF commitments when revoking probation for DJF-eligible offenses. Yet, the minor's interpretation would produce exactly that absurd result if the prosecution mistakenly alleges the latest offense in a 602 petition instead of a 777 notice. It would immunize from DJF commitment a minor who quickly admits new misconduct alleged in a 602 petition even if the minor remained eligible for DJF under the terms of probation on a prior offense. Two minors on probation for the same DJF-eligible offense who later committed the same non-section-707(b) conduct would be subject to very different dispositions depending on which form of pleading was filed.

The statutory scheme governing juvenile delinquency is designed to give the court "maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it." (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1323.) Flexibility is the hallmark of juvenile court law, in both delinquency and dependency interventions. (*In re James R.* (2007) 153 Cal.App.4th 413, 432.) As noted, the juvenile court has long enjoyed great discretion in the disposition of juvenile matters (*In re W.R.W.*, *supra*, 17 Cal.App.3d at p. 1037), and that discretion is codified in section 782. To interpret section 733(c) as cutting off the

16

juvenile court's broad discretion to order an appropriate disposition, simply because the wrong document was filed, would elevate form over substance and create an absurd result the Legislature could not have intended. When a DJF commitment for a section 707(b) offense for which probation was ordered serves the interests of justice and the welfare of the minor, the juvenile court has discretion to dismiss a new 602 petition to permit treatment of the matter as a probation violation.

The dissent agrees that section 733(c) does not restrict a juvenile court's power to dismiss a 602 petition before jurisdictional findings have been made. Once an allegation of a non-DJF-eligible offense has been admitted or found true, however, the dissent would hold section 733(c) strips the court of discretion to dismiss the petition in whole or in part. (Dis. opn. of Cantil-Sakauye, C.J., *post*, at pp. 5-6.) But, as noted, a minor can admit allegations of a 602 petition at the detention hearing, which must be held *the next judicial day* after the petition is filed. (§ 632, subd. (a).) There is no indication the Legislature intended to limit the juvenile court's dispositional options irrevocably so early in the proceedings. The dissent's interpretation of section 733(c) could have the perverse effect of discouraging the early resolution of delinquency matters. If, by accepting an admission at the outset of the case, the juvenile court stands to lose its discretion under section 782, courts may be loath to accept such early pleas.

The dissent's interpretation could also reward gamesmanship in the context of multicount petitions. If a minor commits a series of criminal offenses and all are alleged in the same 602 petition, there is an argument that section 733(c) prohibits commitment to DJF unless the last offense committed is one listed in section 707(b) or Penal Code section 290.008, subdivision (c). Although section 733(c) premises eligibility for DJF on the nature of "the most recent offense alleged in a petition," focusing on the most recently committed offense could lead to arbitrary and potentially absurd results in a multicount case. A minor who commits a string of violent acts would be immunized from a DJF commitment if

17

the crime spree happened to end with a nonqualifying offense. An arguably more sensible interpretation of section 733(c) would require simply that an offense alleged in the *most recent petition*, and admitted or found true, be listed in section 707(b) or Penal Code section 290.008, subdivision (c).[3]

Assuming that DJF eligibility turns on the nature of a minor's most recently committed offense, the dissent posits that section 782 gives the court discretion to strike individual counts in a 602 petition to change the "most recent" offense alleged into one that is DJF eligible. (Dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 6, fn. 2.) "Thus, if a minor committed a crime spree that included DJF-eligible offenses, but the offense committed last in time was a DJF-ineligible offense, the juvenile court might, in an appropriate case, dismiss the allegations regarding the last offense in order to clearly preserve a DJF-dispositional option." (*Ibid*.) The dissent therefore recognizes that section 782 can and sometimes should be used for the purpose of *preserving* the juvenile court's ability to order a DJF commitment. Nevertheless, in the dissent's view, the court's discretion to use section 782 for this purpose is completely lost once the allegations in a petition have been admitted or found true. A minor could admit *all* allegations of a multicount 602 petition at the detention hearing, just one day after the petition was filed, and completely avoid a DJF commitment regardless of the multitude or severity of the offenses, so long as the last offense committed was not DJF eligible. Under the dissent's view, the juvenile court would be powerless to prevent this result. We disagree. If the Legislature had intended to limit the court's discretion to forestall absurd and unjust consequences, we believe it would have made this intent clear. It did not.

---

[3]     We need not, and do not, resolve this controversy here. We note, however, that focusing on the most recent petition, and not the most recent offense described in a multicount petition, would appear to avoid absurd consequences and remain consistent with the Legislature's intent to reserve DJF commitments for specific recent offenses.

Although the dissent concedes that "nothing in the language of [section 733(c)] or its history expressly restricts the court's use of its dismissal authority," the dissent expresses concern that under our interpretation "a juvenile court could always avoid the DJF ineligibility provisions of section 733(c), negating the provisions of such statute and frustrating the legislative purposes of the juvenile justice realignment legislation." (Dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 6.) This argument ignores the unique context we are addressing. Dismissal of a 602 petition enables the court to order a DJF commitment otherwise prohibited by section 733(c) *only* for a minor *currently* on probation for a DJF-eligible offense. If the minor is not on probation, or is on probation for a nonqualifying offense, a section 782 dismissal can have no effect on DFJ eligibility. Section 733(c)'s restrictions on DJF eligibility thus have "meaningful[] operat[ion]" in all delinquency cases involving a minor not on probation, or on probation for a nonqualifying offense. (See dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 7.)

The dissent's unease that juvenile courts may abuse section 782 to circumvent the legislative goal of realignment also ignores the scrutiny such decisions undergo on appellate review. A juvenile court's decision to dismiss a 602 petition under section 782 must be supported by a statement of "specific reasons" in a minute order. (Cal. Rules of Court, rule 5.790(a)(2)(A); see *In re Juan C.* (1993) 20 Cal.App.4th 748, 752-753.) A section 782 dismissal is also subject to review for abuse of discretion. (See *In re Jesus J.* (1995) 32 Cal.App.4th 1057, 1060.) If the juvenile court's action is arbitrary, or does not comport with section 782's requirements that the dismissal serve the interests of justice and the welfare of the minor, it can be reversed on appeal as an abuse of discretion.

### 4. *Appellate Case Law*

Two published appellate decisions have considered the issue before us and reached opposite results.

19

In *J.L.*, *supra*, 168 Cal.App.4th 43, J.L. committed a series of offenses that were adjudicated at various times under 602 petitions and 777 notices. In May 2006, he admitted committing felony theft, unauthorized use of a vehicle, and assault, as alleged in 602 petitions from January and March 2006. (*J.L.*, at p. 49.) In December of the same year, another 602 petition was filed alleging attempted second degree robbery with personal use of a knife. (*J.L.*, at p. 50.) The minor admitted these allegations but was later granted permission to withdraw his admission to the weapon enhancement. (*Id*. at pp. 50-51.) Without the enhancement, the attempted robbery offense was not DJF eligible under section 733(c). Recognizing this problem, at the dispositional hearing the juvenile court dismissed the December 602 petition and ordered J.L. committed to DJF on the March 2006 petition. (*J.L.*, at pp. 52-54.) J.L. challenged this order on appeal, arguing section 733(c) precluded his commitment to DJF because his most recent offense admitted and found true was the attempted robbery alleged in the December 2006 petition. (*J.L.*, at p. 56.) Without analyzing the apparent conflict in the statutes, the Court of Appeal upheld the dispositional order because the juvenile court had dismissed the December 2006 petition under section 782, thus making the DJF-eligible offense alleged in the March 2006 petition the "most recent" offense for purposes of section 733(c). (*J.L.*, at pp. 56-57.)

The Court of Appeal here rejected *J.L.* in favor of the contrary ruling in *V.C.*, *supra*, 173 Cal.App.4th 1455. Although the decision below relied heavily on the reasoning in *V.C.*, that case is distinguishable and does not guide our analysis.

In 2005, V.C. admitted committing felony oral copulation of a minor, an offense listed in section 707(b). He was placed in a youth facility and later moved to another placement with special conditions of probation imposed. (*V.C.*, *supra*, 173 Cal.App.4th at p. 1459.) In November 2007, two months after section 733(c) was enacted and two years after V.C.'s 602 petition was sustained, the district attorney filed another 602 petition alleging V.C. had committed three new sex offenses. (*V.C.*, at p. 1460.) *In a negotiated plea bargain*, V.C. admitted a

20

misdemeanor that was *not* DJF eligible, and the remaining allegations were dismissed. (*Ibid.*) The court again ordered residential treatment, and V.C. was placed accordingly. (*Id.* at p. 1466.) Four months later, in February 2008, the district attorney filed a 777 notice alleging V.C. had violated probation by failing to participate in sex offender treatment and obey the rules in his group home. (*V.C.*, at p. 1460.) At the same time, the district attorney moved to dismiss the November 2007 petition so that, pursuant to section 733(c), the "most recent offense alleged in any petition" would be the 2005 oral copulation offense, which is DJF eligible. (*V.C.*, at p. 1460.) After the juvenile court granted the motion, V.C. petitioned for a writ of mandate. (*Id.* at p. 1461.)

The Court of Appeal first observed that V.C. had a "due process right to the benefit of his plea bargain in the 2007 petition." (*V.C.*, *supra*, 173 Cal.App.4th at p. 1465.) It was not just that V.C. had admitted an allegation in the petition. The district attorney had agreed to the resolution, the juvenile court had ordered a disposition, and V.C. had *already entered* the placement that the court ordered. (*Id.* at p. 1466.) As the Court of Appeal stressed, V.C.'s "plea agreement was thus a *fully executed agreement*." (*Ibid.*, italics added.) The court concluded that dismissal of the November 2007 petition was not in the interests of justice, as required by section 782, because V.C. had a constitutional right to the benefit of his completed plea bargain. (*V.C.*, at p. 1467.) The court reasoned: "Allowing a trial court to rescind a plea bargain that has been accepted and fully executed, because it was unaware of a change in the law . . . , would clearly introduce unacceptable instability in the practice of plea bargaining. No bargain would ever truly be secure." (*Ibid.*)

Although the court went on to analyze the language and history of section 733(c) to "confirm[]" its conclusion, the decision rested primarily on the fact that dismissal of the most recent 602 petition was an attempt to undo an executed plea bargain. (*V.C.*, *supra*, 173 Cal.App.4th at p. 1467.) It would be difficult indeed to conclude that such an action served the interests of justice. The

21

facts of this case are quite different. Just three days after the minor admitted an offense that was not DJF eligible, the prosecution moved to set aside the plea and dismiss the 602 petition. No disposition on the petition had been entered, or even much discussed. Indeed, the court explained that it was dismissing the 602 petition to broaden the range of options for disposition.

Dismissing a 602 petition *after* disposition potentially raises a host of constitutional concerns not presented in the case before us. We express no opinion on whether such a dismissal could ever be appropriate. However, we disagree with the *V.C.* court's holding that section 733(c) must always override the juvenile court's ability to dismiss a delinquency petition under section 782. Accordingly, that portion of *V.C. v. Superior Court*, *supra*, 173 Cal.App.4th 1455, 1467-1469, is disapproved.

C. *Scope of Juvenile Court's Discretion Under Section 782*

Apart from section 733(c), the minor contends dismissal of a 602 petition to permit disposition under an earlier petition is not permissible because section 782 may only be used to terminate jurisdiction. This claim rests on an analogy to Penal Code section 1385, the dismissal statute applicable to adult criminal cases, and the legislative history of section 782. Both arguments are unpersuasive.

1. *Analogy to Penal Code Section 1385*

In terms similar to section 782, Penal Code section 1385 grants trial courts the power to dismiss a criminal action "in furtherance of justice." In determining whether a section 782 dismissal is "in the interests of justice" (§ 782), some courts have looked to Penal Code section 1385 for guidance. (*V.C.*, *supra*, 173 Cal.App.4th at p. 1465; *Derek L. v. Superior Court*, *supra*, 137 Cal.App.3d at pp. 233-234.)

In *V.C.*, the Court of Appeal remarked, "it has been said dismissal pursuant to [Penal Code] section 1385 'runs only in the immediate favor of a defendant, i.e., by cutting off an action or a part of an action *against* the defendant.' " (*V.C.*, *supra*, 173 Cal.App.4th at pp. 1464-1465, fn. 9, italics added, quoting *People v.*

22

*Hernandez* (2000) 22 Cal.4th 512, 524.) Having construed Penal Code section 1385 as a statute that operates only to reduce punishment of a criminal defendant, the *V.C.* majority found it "troubling" that the juvenile court had used its analogous authority under section 782 to impose a more severe sanction. (*V.C.*, at pp. 1464-1465, fn. 9.) The starting point of this analysis is faulty, however, because we have never held that a dismissal under Penal Code section 1385 can only be entered to benefit the defendant. Immediately after we stated, in a different context, that a dismissal under Penal Code section 1385 runs in the immediate favor of a defendant, we added: "To be sure, as the People point out, dismissal under Penal Code section 1385, subdivision (a), need not always be ordered for the benefit of a defendant rather than the prosecution. Thus, a dismissal of criminal charges before trial may be 'designed to enable the prosecution "to obtain further witnesses, to add additional defendants, to plead new facts, or to plead new offenses . . . ." ' (*People v. Orin* (1975) 13 Cal.3d 937, 946.)" (*People v. Hernandez*, at p. 524.)

The analogy between section 782 and Penal Code section 1385 is also flawed for a more fundamental reason. "Juvenile proceedings are conducted not only for the protection of society, but for the protection and benefit of the youth involved." (*Derek L. v. Superior Court*, *supra*, 137 Cal.App.3d at p. 236.) "Juvenile court action thus differs from adult criminal prosecutions where 'a major goal is corrective confinement of the defendant for the protection of society.' [Citation.] The protective goal of the juvenile proceeding is that 'the child [shall] not become a criminal in later years, but a useful member of society.' [Citation.]" (*In re Ricardo M.* (1975) 52 Cal.App.3d 744, 749; see also *People v. Arias* (1996) 13 Cal.4th 92, 164.) In contrast to the more punitive aims of the adult criminal justice system, "the purpose of the juvenile justice system is '(1) to serve the "best interests" of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and "enable him or her to be a law-abiding and productive member of his or her family and community," and (2) to "provide for the

23

protection and safety of the public . . . ." (§ 202, subds. (a), (b) & (d); [citations].)' [Citation.]" (*In re R.O.* (2009) 176 Cal.App.4th 1493, 1500.) To this end, the language of section 782 specifically requires that any dismissal of a delinquency petition serve *both* "the interests of justice *and the welfare of the minor*." (§ 782, italics added.) No corresponding concern for the welfare of an adult criminal defendant appears in Penal Code section 1385.

A DJF commitment is not necessarily contrary to a minor's welfare. The DJF has many rehabilitative programs that can benefit delinquent wards. (See *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485-486; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 153-154.) Some wards, like the minor here, may be best served by the structured institutional environment and special programs available only at the DJF. (See, e.g., *In re Donald S.* (1988) 206 Cal.App.3d 134, 139 [finding it in child's best interest "to receive care, treatment and rehabilitation solely as a ward of the youth authority [now DJF]"].) In determining a child's best interests, the juvenile court must examine all the relevant circumstances. (See *In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31 ["Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances."].)

Leaving aside the welfare of the minor, the dissent contends a dismissal that permits a DJF commitment "cannot be in the interests of justice," as required by section 782, because "those interests have already been determined by the Legislature" and expressed in section 733(c). (Dis. opn. of Cantil-Sakauye, C.J., *post*, at p. 8.) We conclude instead that the realignment policies served by section 733 are not so unyielding they cannot tolerate occasional exceptions when the severity of a minor's offenses, and the minor's own special needs, call for a disposition that includes DJF. If the Legislature had meant to impose such an absolute prohibition on DJF confinement, it would have removed the court's

24

ability to order a DJF commitment for nonviolent probation violations.**4** Moreover, there is no reason to assume juvenile courts will ignore the policies underlying section 733 when they exercise their discretion to dismiss a 602 petition. In deciding whether a dismissal that would qualify an otherwise ineligible minor for a DJF commitment serves the interests of justice and the minor's welfare, the court must take into account all circumstances relevant to the public's need for safety and the juvenile's need for rehabilitation. Where the minor has previously failed in a series of local programs, or where, as here, no local programs will accept the minor, statewide confinement in the structured setting offered by DJF may decisively outweigh other considerations.

### 2. *Legislative History of Section 782*

In a related point, the minor asserts that legislative history demonstrates section 782 was intended to be used only to end the juvenile court's jurisdiction over a minor. Presiding Justice Scotland expressed this view in his concurring opinion in *V.C.*, *supra*, 173 Cal.App.4th at page 1472. Having reviewed the sparse legislative history for section 782, we disagree.

Section 782 was enacted in 1971 with the passage of Senate Bill No. 461 (1971 Reg. Sess.). (Stats. 1971, ch. 607, § 1, p. 460.) The bill was intended to "codif[y] present practice in many counties." (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 461 (1971 Reg. Sess.) p. 1.) The bill offered one important new feature, however. Existing law allowed juvenile courts to dismiss petitions and set aside wardship findings only when the minor was under the jurisdiction of the court. (Cal. Youth Authority Com., Enrolled Bill Rep. on Sen. Bill No. 461 (1971 Reg. Sess.) Aug. 10, 1971, p. 1.) An enrolled bill report noted

---

**4** Such a result would have been easy enough to accomplish. If section 733(c) had been written to require DJF eligibility for the minor's "most recent offense alleged in a petition *or notice*," or if the statute had simply tied eligibility to the minor's "most recent offense," without mentioning the court document in which it is alleged, the juvenile court's ability to send wards to DJF on probation violations would arguably have been greatly restricted.

25

that Senate Bill No. 461 would extend this authority to all cases involving a person under age 21, "regardless of whether the minor is, at the time of dismissal, a ward or dependent of the court." (*Ibid.*) "Some judges have felt that minors have been continued under the jurisdiction of the juvenile court so that the court could take this option of setting aside wardship." (*Ibid.*) The report explained that the bill would give courts latitude "to terminate jurisdiction at an earlier date if the court felt that this was in the best interest of the minor." (*Ibid.*) Consistent with this analysis, the Assembly Committee on Criminal Justice explained that newly enacted section 782 would allow the juvenile court to "dismiss a petition or set aside a finding even after jurisdiction over the minor has terminated and he is no longer a ward or dependent child of the court." (Assem. Com. on Criminal Justice, New Statutes Affecting the Criminal Law (1971 Reg. Sess.) p. 36.)

Read carefully, this legislative history does not show that section 782 was intended to be used for the limited purpose of terminating the juvenile court's jurisdiction. Rather, because section 782 extended the juvenile court's power to dismiss petitions and set aside findings to minors who were *not presently wards of the court*, legislative analyses observed that the courts would be free to terminate jurisdiction over minors earlier, without fear of losing this authority.

Although the bill's sponsor described Senate Bill No. 461 as a measure "authoriz[ing] the judge of a juvenile court to terminate its jurisdiction" when the interests of justice and welfare of the minor require dismissal (Sen. Joseph Kennick, letter to Governor Ronald Reagan (1971 Reg. Sess.) Aug. 12, 1971, Governor's chaptered bill files, ch. 607),[5] nothing in the language of section 782

---

[5] The minor directs us to nearly identical comments by Senator Kennick in regard to a predecessor bill that would have added the same version of section 782. (Sen. Bill No. 1221 (1970 Reg. Sess.) Apr. 3, 1970.) However, the senator did not say that a dismissal could *only* be used to terminate the court's jurisdiction. In any event, "[w]e have frequently stated . . . that the statements of an individual legislator, including the author of a bill, are generally not considered in construing a statute, as the court's task is to ascertain the intent of the

or the legislative history suggests that termination of jurisdiction was the *only* outcome the Legislature found permissible. Termination of jurisdiction is one logical outcome to expect when the juvenile court dismisses a delinquency petition. The Legislature did not necessarily foreclose other outcomes when it enacted section 782, however. If the minor's view were correct, the juvenile court could never dismiss a 602 petition, or set aside findings in such a petition, if it would still retain jurisdiction over the minor based on previous petitions. There is no indication the Legislature intended such a result. On the contrary, section 782 was meant to codify and expand the juvenile court's discretionary dismissal power.

D. *Conclusion*

Since its enactment in 1971, section 782 has given juvenile courts broad discretion to dismiss delinquency petitions when a dismissal serves the interests of justice and the welfare of the minor. Had Legislature intended to limit that discretion when it enacted section 733(c), one would have expected it to make this intent plain, either in the language of section 733(c) or elsewhere in the statutory scheme. It did not. Moreover, because the Legislature did not amend the law to prohibit minors from being committed to DJF when their probation on a DJF-eligible offense is revoked, it is reasonable to conclude the Legislature continued to find such commitments appropriate, notwithstanding the goals sought to be served by section 733(c). If a DJF commitment is appropriate in the context of a probation revocation, then it remains appropriate even if the prosecution files a 602 petition that has to be withdrawn or dismissed.

Accordingly, we conclude the juvenile court here had authority to dismiss the 602 petition filed on August 18, 2009. Dismissal of this petition, for the purpose of allowing a DJF commitment on the minor's previously sustained 602

---

Legislature as a whole in adopting a piece of legislation." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062.)

27

petition, was not precluded by statute, as the Court of Appeal below held.  A dismissal for this purpose is appropriate under section 782 so long as the juvenile court, in its discretion, finds that the dismissal is required by the interests of justice and the welfare of the minor.  Because the Court of Appeal determined that the juvenile court lacked authority to dismiss the 2009 petition, it did not reach the minor's claims that insufficient evidence showed he would benefit from a DJF commitment and that the juvenile court erroneously relied on information received outside the proceedings.  We shall remand for the Court of Appeal to decide these remaining issues.

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed.  The matter is remanded to that court for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**WE CONCUR:**

**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**

28

**DISSENTING OPINION BY CANTIL-SAKAUYE, C. J.**

Despite the Legislature's clear provision in Welfare and Institutions Code section 733, subdivision (c) (section 733(c))[1] that a juvenile ward is *ineligible* for commitment to the "Department of Corrections and Rehabilitation, Division of Juvenile Facilities" (DJF) when the juvenile ward's "most recent offense alleged in any petition and admitted or found to be true by the court" is not an offense listed in section 707, subdivision (b) (section 707(b)) or one of the sex offenses described in subdivision (c) of Penal Code section 290.008 (Pen. Code, section 290.008(c)), the majority concludes that a juvenile court retains the discretion to commit such a juvenile ward to the DJF by using its authority under section 782 to dismiss the most recently sustained petition and reach back to the last sustained petition if the minor is DJF eligible under such petition. (§ 731, subd. (a)(4).) I cannot agree. The majority's construction of the statutes does not properly harmonize them. It renders section 733(c) ineffective and essentially meaningless. I, therefore, dissent.

It has long been and continues to be the law that when a minor is before the juvenile court for disposition based on a section 602 petition, "[section] 725.5 and other relevant policies of Juvenile Court Law require that the court consider 'the broadest range of information' in determining how best to rehabilitate a minor and

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

afford them adequate care." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2012) Disposition of Ward, § 3.92[3][a], pp. 3-137.) The juvenile court must consider "the safety and protection of the public, the importance of redressing injuries to victims, and the best interests of the minor" in its deliberations regarding disposition. (§ 202, subd. (d).) "No ward of the juvenile court shall be committed to the [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he [or she] will be benefited by the reformatory educational discipline or other treatment provided by the [DJF]." (§ 734.) Thus, in all cases a juvenile ward may be committed to the DJF only if such commitment is appropriate under the circumstances specific to that individual juvenile offender.

However, in 2007, the Legislature acted to impose further limitations on the discretion of the juvenile court with respect to DJF commitments. Responding to both policy arguments and budgetary constraints (*In re N.D.* (2008) 167 Cal.App.4th 885, 891-892; Little Hoover Com., Juvenile Justice Reform: Realigning Responsibilities (July 2008) pp. i-ii, <http://www.lhc.ca.gov/studies/192/report192.html> [as of Aug. 27, 2012]), the Legislature passed juvenile justice realignment legislation as part of a budget trailer bill and a subsequent cleanup bill. (Stats. 2007, ch. 175, §§ 19, 22; Stats. 2007, ch. 257, § 2.) The legislation expressly restricts the normal dispositional authority of the juvenile court.

Specifically, section 731, subdivision (a)(4) (section 731(a)(4)) provides that DJF commitments are available for only those juveniles who are or have been ordered and adjudged to be wards of the court under section 602. Further, only those juvenile wards who have committed a serious or violent felony offense described in section 707(b) or a sexual offense described in Penal Code section 290.008(c), are eligible for a DJF commitment. (§ 731(a)(4).) And among that

2

class of juvenile offenders, DJF commitment is limited to those juvenile wards whose "most recent offense alleged in any petition and admitted or found to be true by the court" is a serious or violent offense under section 707(b) or a sex offense specified in Penal Code section 290.008(c). (§ 733(c).) In other words, the statutes do not authorize commitment to the DJF in the unrestricted discretion of the juvenile court based on the court's review of the overall delinquent history of a juvenile offender or on whether the minor still may be considered generally a serious, violent or sexual offender dangerous to the community for whom DJF commitment is appropriate. (*V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1468 (*V.C.*).) Rather, the statutes limit the pool of juvenile offenders who may be committed to the DJF to juveniles who are wards of the court based on *current* section 707(b) or Penal Code section 290.008(c) offenses.

The language of section 733(c) specifically defines those who are considered to have such a *current* qualifying offense. It provides that a juvenile ward is ineligible for commitment to the DJF when "the most recent offense alleged in any petition and admitted or found to be true by the court" is not one of the DJF-qualifying offenses. (*Ibid*.) As the majority recognizes (maj. opn., *ante*, at pp. 7-8), the phrase "the most recent *offense* alleged in any *petition*" (italics added) logically refers to the allegations of violation pled in a section 602 petition. (*In re M.B.* (2009) 174 Cal.App.4th 1472, 1477-1478; *In re J.L.* (2008) 168 Cal.App.4th 43, 60; see also *In re D.J.* (2010) 185 Cal.App.4th 278, 286.) The phrase "admitted or found to be true by the court" is most reasonably understood to refer to the juvenile court's jurisdictional findings. (§ 733(c); see §§ 657, subd. (b), 701, 702; Cal. Rules of Court, rules 5.774(e), 5.778, 5.780(e)(3).) Read with this understanding, eligibility/ineligibility for DJF commitment under section 733(c) is determined when a minor has admitted committing a criminal offense alleged in a section 602 petition at his or her detention hearing or later, or when

3

the allegation of a criminal offense in a section 602 petition is found true by the juvenile court at the jurisdictional hearing, i.e., when the section 602 petition is sustained. It is at that point that the juvenile court has taken jurisdiction over the minor based on the commission of the criminal offense as charged in the petition and that offense becomes the minor's "most recent offense" for purposes of section 733(c). If that most recent offense does not make the minor ineligible for a DJF commitment under section 733(c) and the minor is eligible for commitment to the DJF under section 731(a)(4), then the juvenile court may exercise its discretion at disposition to adjudge the minor to be a ward of the court, or to continue wardship for a minor who has previously been adjudged a ward of the court and commit the ward to the DJF.

Construing the combination of section 731(a)(4) and section 733(c) in this way furthers the legislative purposes of reducing the number of juvenile offenders committed to costly state-level facilities and keeping all but the most dangerous offenders in appropriate and effective local placements. (*In re N.D., supra,* 167 Cal.App.4th at pp. 891-892; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007, p. 2; Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 81 (2007-2008 Reg. Sess.) as amended July 19, 2007, p. 1; see also § 1960 ["The Legislature finds and declares that local youthful offender justice programs, including both custodial and noncustodial corrective services, are better suited to provide rehabilitative services for certain youthful offenders than state-operated facilities. Local communities are better able than the state to provide these offenders with the programs they require, in closer proximity to their families and communities, . . ."].) Requiring DJF commitments to be based on "the" (§ 733(c)), not "a," most recently sustained juvenile petition also encourages, promotes, and rewards a juvenile ward's improvement in behavior

4

even though the juvenile may not have been completely successful in reforming his or her conduct.

In situations where the prosecutor views the juvenile's most recent offense not to demonstrate rehabilitative progress, but a continuation of prior serious behavioral problems for which the juvenile is on probation under a DJF-eligible sustained petition, the prosecutor can file a notice of probation violation under section 777. A notice of probation violation does not trigger the terms of section 733(c). (*In re M.B, supra,* 174 Cal.App.4th at pp. 1474-1475.) Nor does a violation of probation proceeding improperly circumvent section 733(c). Rather, the Legislature's choice to exclude probation violations that factually involve the commission of DJF-ineligible offenses from section 733(c) reasonably recognizes that in such situations the juvenile court may order a commitment to the DJF based on the prior sustained eligible offense, with the maximum term of confinement correspondingly limited by that offense. (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 165.) Where an extension of the juvenile court's jurisdiction is appropriate, for example, to allow further services and monitoring, a new petition is necessary. The prosecutorial discretion to proceed by either section 777 notice or the filing of a new section 602 petition permits a flexible approach to the individual juvenile's situation and preserves the incentive for a juvenile on probation for a DJF-qualifying offense to reform. (See maj. opn., *ante*, at p. 12.)

Moreover, where a prosecutor files a section 602 petition alleging a new offense or offenses, but subsequently either the prosecutor or the juvenile court concludes the minor's history demonstrates that proceeding by way of a notice of probation violation is more appropriate and in the best interests of the minor, dismissal of the new section 602 petition, in whole or in part, pursuant to section 782, is not prohibited by section 733(c) — provided the dismissal is ordered prior

to entry of jurisdictional findings on the new petition.**2**  Until the allegations of the new petition have been admitted or found true, the restrictions of section 733(c) are not triggered.

I cannot agree, however, with the majority that section 782 is available after the juvenile court enters jurisdictional findings sustaining a new section 602 petition alleging a DJF-ineligible offense.  Although there is no reference in section 733(c), or its legislative history, to section 782 and nothing in the language of the statute or its history expressly restricts the court's use of its dismissal authority in this situation, such restriction is necessarily and plainly implied.**3** Otherwise, a juvenile court could always avoid the DJF-ineligibility provisions of section 733(c), negating the provisions of such statute and frustrating the legislative purposes of the juvenile justice realignment legislation.

---

**2**  Such dismissal discretion would extend to the possible striking of individual counts alleging DJF-ineligible offenses.  Thus, if a minor committed a crime spree that included DJF-eligible offenses, but the offense committed last in time was a DJF-ineligible offense, the juvenile court might, in an appropriate case, dismiss the allegations regarding the last offense in order to clearly preserve a DJF-dispositional option.

**3**  Section 782 differs from Penal Code section 1385 in that section 782 requires a dismissal to be both in "the interests of justice" and that "the welfare of the minor require[s] such dismissal" or "that the minor is not in need of treatment or rehabilitation."  Nevertheless, with respect to its status as statutory authorization for dismissals and its requirement that a dismissal must be "in furtherance of justice," case law regarding Penal Code section 1385 may provide useful insight.  (See *V.C., supra,* 173 Cal.App.4th at p. 1464; accord, *In re Juan C.* (1993) 20 Cal.App.4th 748, 752; *Derek L. v. Superior Court* (1982) 137 Cal.App.3d 228, 233.)  Such case law makes it clear that the judicial authority to dismiss a case or strike a sentencing allegation under Penal Code section 1385 may be eliminated by the Legislature even without an express reference to section 1385 if there is a clear legislative direction to that effect.  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 518-519; *People v. Thomas* (1992) 4 Cal.4th 206, 211; *People v. Tanner* (1979) 24 Cal.3d 514, 519.)  The same principle should be applicable to section 782.

6

That is, in the situation where the juvenile court would conclude, based on all the information before it, that a DJF commitment should *not* be ordered for a juvenile offender, it would be unnecessary for section 733(c) to provide that DJF commitment is not permitted. Section 733(c) meaningfully operates only in the circumstance where the juvenile court would otherwise be inclined to order a DJF commitment. If, however, the juvenile court has the discretion to dismiss the most recently sustained petition under section 782 whenever it believes a DJF commitment is appropriate and can be reached by proceeding on a section 777 notice of probation violation, the very specific language in section 733(c) restricting eligibility to "the most recent" sustained petition offense is illusory. The majority's interpretation of the statutes to allow such dismissals violates the fundamental rule of statutory interpretation that presumes every part of a statute has some meaning and effect, as well as the corollary rule requiring us to avoid, if possible, a construction that renders statutory language surplusage. (*People v. Arias* (2008) 45 Cal.4th 169, 180.)

At a minimum, the majority's construction of the statutes rewrites section 733(c) to allow a juvenile court to order a DJF commitment if it finds the juvenile offender has committed and is on probation for "a" recent DJF-qualifying offense. This violates the principle of statutory construction that precludes us from adding or altering statutory language "to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

Moreover, I believe use of section 782 in this case is inappropriate for an additional reason. Section 782 authorizes a dismissal if it is in the interests of justice *and* required for the welfare of the minor. Both are required and a dismissal is unauthorized if either prong is not met. Through sections 731(a)(4) and 733(c), the Legislature has determined that the public protection and safety

7

interests of society and the rehabilitative interest of juvenile offenders is best balanced by placement of nonserious or nonviolent, juvenile offenders or those whose offense is nonsexual, at the local level and that a state-level DJF commitment should be reserved for those juvenile offenders who have been currently adjudicated to be serious or violent, or are certain sexual offenders. The use of section 782 to evade the plain meaning restriction in section 733(c) cannot be in the interests of justice as those interests have already been determined by the Legislature. (*V.C.*, *supra*, 173 Cal.App.4th at p. 1468.) A dismissal in such a situation must be considered unauthorized under section 782, which requires a dismissal to be *both* in the interests of justice and required for the welfare of the juvenile.

Nevertheless, the majority concludes that the Legislature intended to retain a juvenile court's authority under section 782 to dismiss a section 602 petition even in the narrow situation governed by section 733(c). The majority reasons that such traditional discretion must be preserved to accommodate the narrow time constraints governing juvenile delinquency proceedings, which can hinder informed prosecutorial choices and inappropriately immunize from a DJF commitment a juvenile who quickly admits at his or her detention hearing a new petition containing a DJF-ineligible offense after an earlier sustained petition made him or her DJF eligible. Again, I cannot agree. The statutory timelines for investigating, filing, hearing, and ruling on a juvenile's alleged commission of a criminal offense are not so short as to cause absurd results under a strict construction of section 733(c). Care must simply be taken up front to consider what is most appropriate for each minor; care that is already presumed in the statutory scheme for juvenile delinquency wardship proceedings.

Specifically, probation officers already have a statutory duty to "immediately" investigate the circumstances of a juvenile who is detained based

8

on allegations of the commission of a criminal offense. (§ 628, subd. (a).) Such investigation logically must include a review of the juvenile's history of juvenile court proceedings in order for the probation officer to properly decide whether or not to send an affidavit to the prosecuting attorney recommending commencement of section 602 proceedings. (§§ 652, 653.5, subds. (b) & (c).) And before filing a section 602 petition alleging a felony offense or as soon as possible after filing, the prosecuting attorney must also review the minor's file to determine if the minor is eligible for deferred entry of judgment under section 790. (§§ 628, subd. (a), 790, subd. (b); Cal. Rules of Court, rule 5.800(b).) Because a determination of eligibility for deferred entry of judgment depends, in part, on the minor's history of juvenile court proceedings (§ 790, subd. (a)), a prosecuting attorney undertaking such investigation will presumably uncover at the same time the information necessary to determine the minor's DJF eligibility. Thus, the statutory scheme contemplates an informed decision by a probation officer and a prosecuting attorney to pursue the matter by filing a section 602 petition or by filing a notice of probation violation pursuant to section 777.

Moreover, although section 657, subdivision (b), provides that a minor "may" admit the allegations of a section 602 petition at his or her detention hearing, I am unaware of any authority requiring the juvenile court to accept a proffered admission at that time, particularly in a situation in which the prosecuting attorney or probation officer informs the court that further investigation is necessary. The juvenile court may put over consideration of the acceptance of the minor's admission until the jurisdictional hearing, which must be set within 15 judicial days from the date of the detention order. (§ 657, subd. (a)(1).) And, nothing prevents the court from inquiring of the minor and his or her counsel whether the minor has previously committed a DJF-eligible offense in order for the court to consider the best resolution of the matter.

Thus, it is reasonable to assume that by the time a minor has admitted or been found by the court to have committed a criminal offense alleged in a section 602 petition, it has been determined by the probation officer, the prosecuting attorney and the juvenile court that it is appropriate for the court to exercise or continue jurisdiction over the minor based on the currently alleged offense or offenses with the concomitant restriction of potential dispositional options.

With guidance from this court regarding the consequences of mistakenly filing and sustaining a new section 602 petition that alleges DJF-ineligible offenses, probation officers and prosecuting attorneys in the future would be more careful to fully investigate a juvenile's record and not to file a new section 602 petition alleging DJF-ineligible offenses in situations where the minor is DJF eligible under an earlier sustained petition and where a DJF commitment may be recommended. The probation officer and prosecuting attorney would be more careful to alert the juvenile court to the minor's history of juvenile court proceedings and the court would be more cautious in accepting admission of the jurisdictional allegations of a new section 602 petition alleging DJF-ineligible offenses. Careful prosecutorial investigation and an occasional delay in jurisdictional hearings within the statutorily allotted time to accommodate such investigation would not discourage early resolution of delinquency matters. (See maj. opn., *ante*, at p. 17.) It would discourage only careless filings and inappropriate haste in some small number of proceedings. In any event, the residual possibility of a prosecutorial mistake does not justify ignoring the plain language of section 733(c).

The 2007 legislation, of which sections 731(a)(4) and 733(c) are a part, represents a fundamental shift in policy by the Legislature from treating juvenile offenders at the state level (DJF) to treating the vast majority of juvenile offenders at the local county level. Given the very specific language chosen by the

10

Legislature in section 733(c), I continue to believe an interpretation that limits the juvenile court's discretion better aligns with the Legislature's preference for local commitments. I would apply sections 731(a)(4) and 733(c) according to their plain terms. I would harmonize section 782 with these statutes by recognizing that juvenile courts continue to have broad discretion to use their dismissal authority under section 782 *except* they may not use section 782 to make a minor who is ineligible for a DJF commitment under section 733(c) eligible for such commitment. I would affirm the judgment of the Court of Appeal that concluded the juvenile court's dismissal here was statutorily unauthorized.


                                                           CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
LIU, J.

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Greg F.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 192 Cal.App.4th 1252
**Rehearing Granted**

_____

**Opinion No.**S191868
**Date Filed:** August 27, 2012
_____

**Court:** Superior
**County:** Sonoma
**Judge:** Raima H. Ballinger

_____

**Counsel:**

Lisa M. Romo, under appointment by the Supreme Court, for Defendant and Appellant.

Susan L. Burrell for Pacific Juvenile Defender Center and Youth Law Center as Amici Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Donald E. DeNicola, Deputy State Solicitor General, Martin S. Kaye, Michael E. Banister, Laurence K. Sullivan, Eric D. Share and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lisa M. Romo
2342 Shattuck Avenue, PMB 112
Berkeley, CA  94704
(510) 644-2621

Jeffrey M. Bryant
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
 (415) 703-5852