Filed 6/27/14  In re Noah L. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Noah L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>NOAH L.,<br><br>        Defendant and Appellant. | A141207<br><br>(Alameda County<br>Super. Ct. No. SJ13022080-01) |

Noah L. was adjudicated a ward of the juvenile court and committed to the Division of Juvenile Justice (DJJ) following his admission that he had committed an arson of an inhabited structure.  He appeals from the dispositional order.  Assigned counsel has submitted a *Wende*[1] brief, certifying that counsel has been unable to identify any issues for appellate review.  Counsel also has submitted a declaration confirming that Noah has been advised of his right to personally file a supplemental brief raising any points which he wishes to call to the court's attention.  No supplemental brief has been submitted.  As required, we have independently reviewed the record.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110.)

We find no arguable issues and therefore affirm.

---

[1] *People v. Wende* (1979) 25 Cal.3d 436.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Noah appeals only from the court's dispositional order.  We therefore discuss the facts of the offenses underlying his jurisdictional admission only as relevant to that order.

On December 10, 2013, at approximately 3:00 a.m., Noah was arrested by an Alameda County sheriff's deputy.  Noah was hiding in some bushes in the immediate vicinity of a house that was on fire.  The garage door was open and fire, smoke and water were pouring from the garage.[2]  The resident and her juvenile son were found asleep in the house.  Two lighters and a plastic water bottle were found in the bushes about three feet from where Noah had been initially detained.  A battalion fire chief responding to the scene advised the deputy that there had been five other possibly related suspicious fires in and around the City of Dublin in the preceding three days.  Noah confessed to the arson, as well as three others, and an attempted arson at another residence.

In one earlier arson, on December 6, 2013, the residents of a home were awakened sometime after 9:00 p.m. by the sound of glass breaking.  The husband saw that the lower portion of the home was engulfed in smoke, and he and his wife had to escape onto the roof of the home.  In another incident, on December 9, 2013, at about 10:45 p.m., a bench on the front porch of a residence was set on fire while the homeowners were inside.  Two other fires were set at residential construction sites between the late afternoon hours of December 9, 2013, and the early morning hours of December 10, 2013, causing damage to interior framing, plumbing and duct work.

Noah was charged by petition with three counts of arson of an inhabited structure (Pen. Code, § 451, subd. (b)), two counts of arson of a structure (*id.,* § 451, subd. (c)), and one count of first degree residential burglary (*id.,* § 459).  He was found ineligible for deferred entry of judgment.  Pursuant to an agreement with the district attorney, Noah admitted to one count of arson of an inhabited structure (*id.,* § 451, subd. (b)), and the remaining counts were dismissed with facts and restitution open.

---

[2] Facts relating to the underlying offenses, which are not in dispute, were set forth in a probation report submitted to the court.

Dispositional hearings were held on January 30, February 6, and February 20, 2014. The court ordered an evaluation by the Alameda County Behavioral Health Care Services Guidance Clinic (Guidance Clinic). The probation officer recommended an out-of-home placement. The Guidance Clinic evaluation noted that Noah had significant emotional disturbance and suffered from post-traumatic stress disorder due to prior sexual abuse and witnessing a friend's suicide. His risk to property, and indirectly to people, was rated as high due to the impulsive and unpredictable nature of his actions. He was found to need intensive residential mental health treatment and psychiatric medication management, and a recommendation was made for placement in a "safe, sheltered psychiatric residential treatment facility." The Guidance Clinic report stated that Noah's mental health issues would "contraindicate" a DJJ commitment. Noah's counsel argued that Noah was not a suitable candidate for DJJ, and that a residential placement was appropriate. The district attorney argued for a DJJ commitment due to the serious nature of the offenses.

The court stated that it had read and considered the probation officer's report, the Guidance Clinic report and recommendation, and the materials submitted by Noah's counsel. The court also indicated that it had personally contacted the director of the proposed residential facility to learn more about its program. The intake director for the facility could not state with certainty that Noah would be accepted into its program. The majority of the minors placed at the facility were social services placements, and not as a result of criminal acts. The director expressed concern over the ability of the program to monitor Noah when he would be working or attending classes at a local community college. The court found that Noah had a high level of mental health needs to be addressed, that Noah's offenses presented "considerable safety risks to the community," and that the residential facility would not be appropriate for Noah since it was not secure. The court also found that the Guidance Clinic report had not adequately addressed community safety issues. The court found that a DJJ commitment was "the only conclusion that I can come to in terms of looking at the other options that are available." The court found that continuance in the home would be contrary to Noah's welfare and

best interests, and that it was probable that he would benefit from the reformatory discipline or other treatment provided by DJJ. The maximum term of confinement was set at eight years, and the court set forth its reasons for its choice of term.

## II. DISCUSSION

Noah's notice of appeal focuses on the court's dispositional order. The juvenile court has long enjoyed great discretion in the disposition of juvenile matters. (*In re Greg F.* (2012) 55 Cal.4th 393, 411.) "The standard of review of juvenile court commitment decisions is well established. 'The decision of the juvenile court . . . may be reversed on appeal only upon a showing that the court abused its discretion in its commitment of the minor." (*In re Jose R.* (1983) 148 Cal.App.3d 55, 59.) " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' [Citation.]" (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) By statutory mandate, the juvenile court must find a commitment to DJJ to be a probable benefit to the minor. (Welf. & Inst. Code, § 734.)[3] The court did so. In determining the appropriate placement for Noah, the court made the necessary findings that removal from the home was required, and considered the Guidance Clinic's psychodiagnostic evaluation, the probation department recommendations, and circumstances of the serious offenses that Noah had admitted committing. No arguable issue is presented as to the dispositional order.

## III. DISPOSITION

The dispositional order of the juvenile court is affirmed.

---

[3] "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." (Welf. & Inst. Code, § 734.)

_____
Bruiniers, J.

We concur:

_____
Jones, P. J.

_____
Needham, J.

5