Filed 12/16/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> M.L., <br><br>     Defendant and Appellant. | A142299 <br><br> (Contra Costa County <br> Super. Ct. No. J1400078) |

## I. INTRODUCTION

We affirm the disposition order committing minor M.L. to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF) for a maximum term of six years.

Despite the acknowledged near-absurdity of the rule, our Legislature and Supreme Court mandate that a minor is only eligible for DJF if the minor's "most recent offense" alleged in a Welfare and Institutions Code section 602 petition is DJF eligible. In this case, the minor was found to have committed a robbery, which, standing alone, would unquestionably expose him to a DJF commitment. This minor, however, was also found to have committed an additional offense, gun possession, overlapping in time with the robbery. Gun possession is not a DJF-eligible offense.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III(B)–(D).

We conclude the "most recent offense" rule does not bar a DJF commitment in this case. First, the possession offense arguably occurred before, but not after, the robbery. Second, even if the offenses were essentially simultaneous, the "most recent offense" rule does not eliminate the juvenile court's discretion to impose a DJF commitment if a minor is currently violent. We further conclude the juvenile court did not abuse its discretion in selecting DJF for this minor and that trial counsel did not render ineffective assistance by not arguing for a reduced maximum commitment term. We do, however, order the trial court to correct a conceded clerical error in its commitment order.

## II. BACKGROUND

Like both parties, we draw a description of the minor's crimes from the probation department's April 8, 2014 report.

A male and female were sitting in a parked vehicle. The minor approached, banged his knuckles on the driver's side window, and, using coarse language, demanded the male open the door. The male saw a silver gun in the minor's right hand. The female saw the minor was armed. She perceived the minor was not "playing around." The minor then demanded the pair produce their wallets and cell phones. The victims complied, handing over their belongings, including the female's purse. The minor exclaimed "West Pittsburg Nigga" and fled the scene.

The victims contacted the police with a description of the minor and his getaway car. Police quickly located and stopped the car, which was driving evasively, and contacted the minor and a friend. These two were placed in a police car. While there, the minor saw the police talking to the man he had "hit." The minor told his friend " 'it's over,' " that he had used a loaded gun, and so might " 'get an armed robbery' " and have to go away. The female victim was able to identify the minor as the assailant and both victims identified their property.

A petition under Welfare and Institutions Code section 602 alleged two counts, one per victim, of robbery (Pen. Code, §§ 211 & 212.5, subd. (c)) with enhancements for personal use of a firearm (Pen. Code, 12022.53, subd. (b)), and one count of a minor possessing a firearm capable of being concealed (Pen. Code, § 29610).

The minor admitted one robbery charge with a modified enhancement (arming under Pen. Code, § 12022, subd. (a)(1), rather than personal use) and admitted the possession charge. The petition was sustained as to those counts and otherwise dismissed.

The disposition hearing spanned three days over a period of a month. The juvenile court struggled with whether it had authority to commit the minor to DJF. Probation initially recommended a DJF commitment. Then, after the juvenile court tentatively decided the minor was ineligible, probation recommended a commitment to the Youthful Offender Treatment Program (YOTP). Ultimately, the juvenile court decided the minor was eligible for DJF and committed the minor there for a maximum term of six years on the robbery charge, staying an additional period of eight months on the possession charge under Penal Code section 654.[1] On the commitment order, the juvenile court indicated that in determining this maximum period of confinement, which was the same length of term an adult might receive, the juvenile court had "considered the individual facts and circumstances of the case."

The minor timely appealed.

---

[1] "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (Pen. Code, § 654, subd. (a).)

### III. DISCUSSION

**A.** *Eligibility for Commitment to Department of Juvenile Justice*

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [DJF]." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250 [95 Cal.Rptr.3d 273].)[2]

A DJF commitment is barred in this case, asserts the minor, under the "most recent offense" rule of Welfare and Institutions Code section 733, subdivision (c).

Section 733 prohibits a DJF commitment when a minor "has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707." Section 707 lists numerous serious offenses including robbery, but not gun possession. (Welf. & Inst. Code, §§ 733, subd. (c); 707, subd. (b)(3).)

Our Supreme Court has recently considered how troubling and bizarre a literal interpretation of the "most recent offense" language of section 733 would be, yet determined a literal interpretation was compelled in light of the statute's lack of ambiguity. (*In re D.B.* (2014) 58 Cal.4th 941, 947–948 [169 Cal.Rptr.3d 672, 320 P.3d 1136] (*D.B.*).) Therefore, when "a minor has committed a series of crimes, the court's ability to impose a DJF commitment depends *entirely* on the type of offense the minor *happened* to commit last." (*Id.* at p. 947, italics added.) This suggests " '[a] minor who commits a string of violent acts would be immunized from a DJF commitment if the crime spree happened to end with a nonqualifying offense' " and this "reward[s] a minor

---

[2] DJF was formerly the California Youth Authority (CYA). A 2005 statute made the name change. (Welf. & Inst. Code, §§ 202, subd. (e)(5), 1000, 1703, subd. (c), & 1710, subd. (a).) We use the name DJF uniformly, even when referring to older cases and statutes.

for committing *more* crimes." (*Ibid.*) Moreover, "because section 733(c) examines only the last offense committed" not the entire slate of committed offenses enumerated in the latest petition, "the statute will sometimes require that currently violent offenders and sex offenders be placed in local settings with juveniles whose offenses are far less serious." (*Id.* at pp. 947–948.) These results, said the Supreme Court, were troubling, but not absurd. (*Id.* at p. 948.)

Thankfully, this case does not require us to take another step toward troubling results or absurdity.

The minor claims his possession charge, concededly not a DJF eligible offense, occurred last in time and continued after the robbery, thus rendering his robbery charge irrelevant for disposition purposes. We do not accept the minor's premise.

First, the minor's gun possession necessarily began *before* the robbery. The two crimes ended at the same time, shortly after the taking, when the police stopped the minor and his friend, who had been driving evasively, and located the gun and the victims' property. As our Supreme Court has held, while a defendant becomes guilty of robbery after the slightest movement of a victim's property, "the crime of robbery continues 'as long as the loot is being carried away to a place of temporary safety.' " (*People v. Navarette* (2003) 30 Cal.4th 458, 502 [133 Cal.Rptr.2d 89, 66 P.3d 1182].) While driving evasively shortly after the taking, the robbery was still ongoing. Under these circumstances, we could conclude the robbery was the "most recent offense"; in any case, there is no way we could conclude the possession offense occurred last.

At best, we might view the offenses as part of a single transaction. Indeed, the juvenile court, in light of the robbery charge, suspended imposition of sentence on the possession charge under Penal Code section 654, subdivision (a), which applies only when a single "act . . . is punishable in different ways by different provisions of law." Such a determination does not bar a DJF commitment under Welfare and Institutions Code section 733.

5

Section 733 was enacted to address budget concerns related to DJF by reducing "the number of juvenile offenders housed in state facilities." (*D.B.*, *supra*, 58 Cal.4th at p. 948; *In re Greg F.* (2012) 55 Cal.4th 393, 409 [146 Cal.Rptr.3d 272, 283 P.3d 1160].) It was meant to divert from DJF those youthful offenders adjudicated for nonviolent, nonserious offenses. (*In re Greg F.*, *supra*, 55 Cal.4th at p. 409.) There was also a belief that "most counties" provided rehabilitative services " 'better and for less cost' " than the state, especially for less serious offenders. (*Ibid.*)

The legislative history also "consistently stresses," however, "that only wards *who are not currently violent* will be diverted from state to local responsibility. (*In re Greg F.*, *supra*, 55 Cal.4th at p. 410, italics added.) "[I]t is clear that the Legislature intended to preserve the possibility of DJF commitments for violent offenders and sex offenders. In keeping with this clear legislative intent, it is not reasonable to interpret the realignment legislation as restricting the juvenile court's ability to order an appropriate disposition for such offenders. Nothing in the legislative history surrounding the enactment of section 733(c) suggests the Legislature intended to strip juvenile courts of their long-held discretion" in such matters. (*Ibid.*)

If a minor commits a violent DJF-eligible offense and noneligible offense at the same time, there can be no question the minor is "currently violent" and the juvenile court should have discretion to select DJF. (*In re Greg F.*, *supra*, 55 Cal.4th at p. 410.) This is a reasonable reading of section 733's "most recent offense" requirement, one that accounts for the statute's legislative history and the history of juvenile court discretion. A contrary reading of section 733 is not required by its text. It would also be unreasonable. It would, defying all logic and expectations, permit a DJF commitment for a robber or other violent offender only if he or she does *not* also concurrently commit a secondary, compounding offense.

For all these reasons, the minor was eligible for a DJF commitment despite section 733.

6

**B.** *DJF Commitment Not Abuse of Discretion*

Nor did the juvenile court err in selecting DJF for this minor. The commitment selection is discretionary with the juvenile court and will not be overturned unless it exceeds the bounds of reason. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; *In re Travis W.* (2003) 107 Cal.App.4th 368, 379–380.) " 'An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.] In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " (*In re Carl N.* (2008) 160 Cal.App.4th 423, 432.)

The gravity of an offense is a consideration in committing a minor to a particular facility. (§ 725.5; *In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1104, disapproved on another ground in *People v. Hernandez* (1988) 46 Cal.3d 194, 206, fn. 14.) Other relevant considerations include the nature, duration, and context of the delinquent conduct and the minor's age. (§ 725.5; *In re Samuel B.*, *supra*, 184 Cal.App.3d at pp. 1103–1104.) The juvenile court may also consider the need to hold the minor accountable for his or her actions (§ 202, subd. (b)), and the community's interest in being protected from crime during rehabilitative efforts (§ 202, subd. (a); *In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57–58).

A DJF commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate, in light of the goals of the juvenile law. (*In re M.S.*, *supra*, 174 Cal.App.4th at p. 1250.) While the juvenile law contemplates a progressively restrictive series of dispositions, a juvenile court may still impose a more restrictive commitment before attempting less restrictive ones. (*In re Eddie M.* (2003)

7

31 Cal.4th 480, 507, citing § 202.) Thus, while DJF generally is a treatment of last resort, the circumstances in a particular case may well suggest the need for a DJF commitment, despite the availability of lesser alternative dispositions. (*In re Tyrone O.* (1989) 209 Cal.App.3d 145, 151.) Moreover, a juvenile court may consider and select DJF even when a county's probation department recommends a lesser commitment. (*In re Martin L.* (1986) 187 Cal.App.3d 534, 544 [probation officer recommended a local disposition, DJF disposition affirmed].)

We acknowledge the minor is this case was detained on his first offense, has shown remorse, has been "polite" to the probation office, has a "positive pro-social adjustment," and has parents who want to support him.

On the other hand, the minor's offense, robbery with a loaded weapon, was violent and serious. His remarks to his friend while in the police car concerning the legal consequences of his action reflected premeditation and criminal sophistication. The minor may not have had a prior juvenile record, but he had a school disciplinary record, which included an incident in which he was caught on campus with a knife and scale. The probation department labeled his risk for re-offense as moderate.

In discussing his crime, the minor refused to disclose how and from whom he acquired the gun. He also appears to have lied to probation about his motives. He said he was stealing to get money for food, but then conceded his parents supported and provided for him, and that he occasionally worked for his father and used money from that job to buy marijuana. The minor simply wanted "more."

The minor also admitted gang association, of which his parents were unaware. The extent of that association is not known—the minor only admitted to hanging out with gang members as friends at school and for protection—but we do know the minor, when committing the robbery, uttered what the juvenile court concluded was a gang boast. The minor also needed conflict resolution for "gang issues" after first being detained at Juvenile Hall.

8

Further, the minor admitted long-standing and regular alcohol and marijuana use. His performance at school was weak. His most recent grades were a C, D, and F, and despite being in 11th grade he had only roughly one-quarter of the credits needed to graduate.

At one of the three hearings on disposition, the probation officer testified that DJF was primarily being recommended instead of the arguably less-restrictive YOTP based on the violent nature of the minor's offense. The officer also testified DJF was a better placement for the minor than YOTP. DJF was more individualized. It was safer. It was not just one unit, but offered a "community" of rehabilitation resources—separate schools, dorms, programs, all of which would benefit the minor.[3]

The juvenile court's selection of DJF over YOTP was not capricious. There was evidence DJF offered a probable benefit to the minor. There was also evidence YOTP was inappropriate, given the reported comparative benefits of DJF, and especially given the serious nature of the minor's offense, society's need for safety and punishment, the minor's criminal sophistication and age (he was 17 at the disposition hearing), and the likelihood of a gang influence and substance abuse problem. That the probation department recommended YOTP after the juvenile court decided the minor was ineligible for DJF, does not mean YOTP was the most appropriate or only option for the minor. Probation did not continue to advocate for YOTP after the juvenile court put DJF back on the table. Even if it had, the juvenile court had evidence in the record from which to conclude DJF was a more appropriate commitment, in light of all the appropriate considerations. (See *In re Martin L.*, *supra*, 187 Cal.App.3d at p. 544.)

---

[3] On appeal, the minor claims DJF is not beneficial because it is teaming with "hardened criminal[s]." The assertion is not supported by any record evidence.

The juvenile court wrestled with the appropriate disposition in this case over three separate hearings, carefully considering its numerous options, and we cannot say it abused its discretion.

## C. *Counsel's Performance in Not Arguing for Lower Maximum Term*

Next, the minor argues his trial counsel was ineffective for not asking the court to exercise its discretion under section 731 to impose a maximum commitment term less than the applicable adult term of six years.

Section 731 "permits the juvenile court in its discretion to impose either the equivalent of the 'maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses' committed by the juvenile (§ 731, subd. (c)) or some lesser period based on the 'facts and circumstances of the matter or matters that brought or continued' the juvenile under the court's jurisdiction (*ibid.*)." (*In re Julian R.* (2009) 47 Cal.4th 487, 498.)

The commitment order form used in this case states the maximum period of commitment and then has a box checked next to the statement: "[t]he court has considered the individual facts and circumstances of the case in determining the maximum period of confinement." Such a statement evidences the court's consideration of a reduced maximum term and the exercise of discretion. (*In re Julian R.*, *supra*, 47 Cal.4th at p. 499 & fn. 4.)

To establish ineffective assistance of counsel, a minor must show " '(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 979–980; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1528.)

Here, we reject the ineffective assistance claim because the minor has not shown prejudice. The juvenile court was aware of its discretion under section 731 and the

10

record reflects it took account of the facts of this particular case. Under these circumstances, we cannot say any argument from counsel would have resulted in a more favorable result for the minor on the issue of the maximum term. (See *People v. Weaver* (2001) 26 Cal.4th 876, 987 [when finder of fact appraised of underlying facts and is presumed to know and apply law correctly, no ineffective assistance claim arises from counsel's failure to make argument connecting facts and law].)

As the minor asserts, when counsel is completely foreclosed from presenting any argument at all following a hearing, the right to assistance of counsel is compromised (*In re William F.* (1974) 11 Cal.3d 249, 256), but that was not the case here. When there are lesser "error[s] adversely affecting defense counsel's closing argument" they do not "necessarily infringes on the [minor's] constitutional right." (*People v. Bonin* (1988) 46 Cal.3d 659, 695, fn. 4, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

### D. *Error in DJF Commitment Form*

Finally, although the juvenile court orally stated the minor's maximum term of commitment would be six years, the written DJF commitment order erroneously states six years eight months. All agree a clerical error was made, that six years is the correct term, and that the order should be corrected. Accordingly, we order the juvenile court to make the correction. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

### IV. DISPOSITION

The disposition order is affirmed, but the juvenile court shall correct the

11

commitment order to reflect a six-year maximum term.  The juvenile court shall deliver the corrected order to DJF and any other pertinent person or entity.


_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Margulies, J.

Trial Judge:                                                   The Honorable John C. Minney

Trial Court:                                             Contra Costa County Superior Court

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General Huy Luong and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

Violet Elizabeth Grayson, under appointment by the Court of Appeal, for Defendant and Appellant.

13