Filed 5/12/22  In re A.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.B., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078192 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1300900) |
| v. | OPINION |
| A.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michele A. Mathis, Judge.  Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsels, for Plaintiff and Respondent.

1

In this appeal raising a single issue under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA), the father claimed membership in the "Cheyenne River Sioux Tribe," but over time also provided many alternative names. The social services agency sent notice to the Cheyenne River Sioux Tribe, which is a federally recognized tribe, as well as other tribes. Considering the responses from the tribes, the juvenile court found that ICWA did not apply.

The question presented is whether the juvenile court committed prejudicial error by not demanding further inquiry when the father provided yet another name for the tribe, claiming that he has "Dakota Native American" ancestry. The father made this statement both immediately before the court found ICWA inapplicable and some months later. We find no error. Throughout this and a previous dependency proceeding, the father fairly consistently claimed membership in a tribe, but he (or someone reporting what he said) used various names to identify that tribe. On this record, it is apparent that the various names all referred to the same tribe, and there is nothing to indicate that his latest description of the tribe was based on new information requiring further inquiry. Accordingly, we find no error and affirm.[1]

BACKGROUND

In July 2019, plaintiff and respondent Riverside County Department of Public Social Services (DPSS) filed a petition pursuant to section 300 for four children: L.U.,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. In addition, because ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.

2

A.B. III, J.B., and E.B.  One of those children, L.U., is not appellant's child and is not at issue in this appeal.  Because defendant and appellant A.B. II (father), the father of the other three children, raises only ICWA compliance relating to his possible Indian ancestry, we need not discuss the circumstances leading to the children's removal or their parents' reunification efforts, except to say that the juvenile court terminated father's parental rights to the three children (as well as the parental rights of their mother, who is not a party to this appeal) in November 2021.

An attachment to a prior dependency petition (involving L.U. and A.B. III, filed by DPSS filed in 2013) indicates that father claimed to be "a registered member of the Cheyenne River Tribe," but he was "unable to provide his registration number."  In the detention report for that petition, father "stated he is of Cheyenne River, South Dakota heritage and is a registered member."  On a Form ICWA-020 (Parental Notification of Indian Status), father indicated that the children were members, may be members of, or eligible for membership in a federally recognized Indian tribe.  Next to "Name of tribe(s) *(name each)*," father wrote "Cheyenne River Sioux tribe," and next to "Name of band *(if applicable)*," father wrote "Lakota."  In the jurisdiction/disposition report, DPSS recounted that father "stated he has Cheyenne and Sioux Indian Ancestry."  This time, father denied that he or A.B. III were registered members but stated that his father was a registered member and was living on the reservation.  After DPSS sent an ICWA notice to the Cheyenne River Sioux Tribe and failed to receive a response for over 60 days, the

3

juvenile court found that ICWA did not apply. That dependency was terminated in December 2014 when the children were returned to their parents.

In an attachment to the current petition, filed in 2019, father "reported that he may be registered but not certain." In the detention report, father "stated he is of Native American heritage. Specifically, he stated he is of Cheyenne River, South Dakota heritage and is a registered member." On a new Form ICWA-020 (Parental Notification of Indian Status), father stated that he was a member of, may be a member of, or was eligible for membership in the "Cheyenne River Tribe," "Lakota Nation." The jurisdiction/disposition report states that father "identified being a part of the Cheyenne River Tribe" and claimed to be "a registered member with the tribe, but denied knowing his registered member number." Father "denied that his children are registered members of the Cheyenne River Tribe."

At the combined jurisdictional and dispositional hearing in August 2019, the juvenile court allowed the parents to retain physical custody of the children and ordered that the parents be provided with family maintenance services. In March 2020, however, DPSS filed a supplemental petition for the four children pursuant to section 387, alleging that the parents failed to comply with their case plans. In an attachment to that supplemental petition, the box next to "Other reason to know the child may be an Indian child" was checked, and underneath that, on a space next to "Summary of information" for father, it reads: "South Dakota Tribe." In an accompanying detention report, father "stated he is affiliated with the South Dakota Tribe." The report also stated that father's

mother "reported Cherokee and Sioux on the paternal side of the family." In a contemporaneous Form ICWA-020 (Parental Notification of Indian Status) that father filed, he indicated that he is a member of, may be a member of, or was eligible for membership in the "Cherokee" and "Sioux" tribes. At the detention hearing on the supplemental petition, the juvenile court detained the children, found that ICWA may apply, and ordered DPSS to provide notice to all identified tribes.

DPSS sent ICWA notices to five tribes: the Cheyenne River Sioux Tribe, the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the Blackfeet Tribe. The notices stated that father's mother "has Cherokee and Blackfeet tribes," presumably referring to at least some degree of affiliation. The notices also stated that both father's father and father's uncle were enrolled members of the Cheyenne River Sioux Tribe. The notice included father's uncle's enrollment number.

The Cheyenne River Sioux Tribe responded to the notice, stating that neither father nor any of the children were enrolled members. The Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the Blackfeet Tribe sent responses to similar effect. As far as the record reveals, the United Keetoowah Band of Cherokee Indians did not respond.

An initial jurisdiction/disposition report (filed in April 2020) on the supplemental petition noted father's statement that "there is Cheyenne Native American Ancestry in his family." Addendum reports, filed for the combined jurisdiction and disposition hearing

that ultimately took place in July 2020, did not mention ICWA or the notices that DPSS sent to the tribes. The minute order from the combined jurisdiction and disposition hearing stated that ICWA "may apply to these proceedings" and that DPSS "ha[d] provided notice to all identified tribes and/or Bureau of Indian Affairs . . . , as required." After finding allegations in the supplemental petition true, the juvenile court declared the children dependents of the court and ordered reunification services for father.

The specific phrase that forms the basis of father's appeal comes from the six-month status review report, which was filed in January 2021. It reported that father "stated there is Dakota Native American Ancestry in his family," but "did not know his tribal registration number." At the six-month review hearing, the juvenile court stated for the first time that "ICWA does not apply to the children" and that "[s]ufficient inquiry ha[d] been made." The minute order added that "there is no new information to indicate that ICWA may now apply."

A later report stated that father had made the same remark: DPSS "spoke with [father] and he stated he has Dakota Native American ancestry; however, he is not a registered member." (On another occasion, DPSS noted that it spoke with father, who "denied Native American ancestry," while also noting that "[f]ather did not appear to be coherent" and "was talking in fragmented sentences.") From January 2021 until father's parental rights to the children were terminated in November 2021, the court continued to find that ICWA did not apply.

DISCUSSION

Father's sole contention is that DPSS failed its duty of further inquiry by not investigating father's claim of "Dakota Native American" ancestry made beginning in January 2021. We find the contention meritless.

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community . . . .'""" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 (*Benjamin M.*).)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

The duty at issue here is the duty of further inquiry that may apply *after* a juvenile court has already found ICWA inapplicable to a proceeding.[2] Section 224.2, subdivision (i)(2) states that "[i]f the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings. . . . The court shall reverse its determination if it

---

[2] To be precise, when father first stated that he has "Dakota Native American" heritage, the juvenile court had yet to declare that ICWA did not apply; father had made the comment in the six-month review report, and it was at the hearing at the six-month review report that the court found ICWA inapplicable. Nevertheless, the legal analysis (as discussed below) is the same.

subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3."

Although the statute does not expressly state as such, it is clear that the "subsequent[]" information that could trigger a duty of further inquiry under section 224.2, subdivision (i)(2) must be *new* information. Otherwise, an absurd and endless loop could arise whereby a parent continuously triggers the social services agency's duty to conduct further inquiry by repeating the same information over and over again. (See *In re Greg F.* (2012) 55 Cal.4th 393, 410 ["In interpreting a statute, courts are obligated to 'adopt a common sense construction over one leading to mischief or absurdity'"].)

Here, the allegedly new information was that father had "Dakota Native American" ancestry. Given the variety of responses father previously gave to DPSS regarding his potential Indian ancestry, however, this was not new information.

Since the first petition was filed in 2013, father has claimed potential membership in the "Cheyenne River Tribe" or "Cheyenne River Sioux tribe," stated that he has "Lakota," "Cheyenne River, South Dakota," or "Cheyenne Native American" heritage, stated that he may be a part of the "South Dakota Tribe," and claimed that he and his family have "Cherokee" and "Sioux" heritage. Although father may have used terms such as "Cheyenne River" more often than "Dakota," his statements that he had "Dakota Native American" ancestry were not new information to DPSS by the time he made them. Rather, as DPSS contends, it seems father was referencing the same tribe

8

throughout, especially considering that both father's father and father's uncle both stated they were enrolled members of the Cheyenne River Sioux tribe, which is at least partially located in South Dakota.

In addition, there is no indication in the record that, when father made statements about having "Dakota Native American" ancestry, it was based on new or additional information he had learned since any previous answer. In contrast, in *In re C.A.* (2018) 24 Cal.App.5th 511, the Court of Appeal found no ICWA error where the child's father initially "indicated that he might have Native American heritage" but subsequently "withdrew" the claim because he had "discovered that the man he thought was his biological father was actually not his father." (*Id.* at pp. 519, 514-515.) Nothing of that sort happened here. Father has never stated, for instance, that his potential "Dakota Native American" ancestry was meant to be a correction to his previous responses, or that his previous responses were inaccurate, or even that his later response was intended to be distinct from his previous responses at all. From our review of the record, even though father never previously used the precise phrase "Dakota Native American" before 2021, the contention that this was meant to be a distinct or revised response is unsupportable.

Father's comparison of this case to *In re T.G.* (2020) 58 Cal.App.5th 275 and *In re Y.W.* (2021) 70 Cal.App.5th 542 is unpersuasive. There was no doubt in either of those cases that the information at issue constituted *new* information, either before or after a finding of ICWA inapplicability. *In re T.G.* involved an articulated belief of Cherokee ancestry that the social services agency failed to act on. (*In re T.G.*, *supra*, 58

9

Cal.App.5th at p. 292.) *In re Y.W.* concerned contact information for the mother's biological relatives where the mother was adopted at a young age and did not have information about her ancestry. (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 549.) In both cases, there was never a need for the court to consider whether the information at issue was new; it could simply take for granted that it was.

Here, father conceded that "proper relative inquiry" was made, and he does not contend that DPSS or the juvenile court failed with its other ICWA-related duties in any other respect. On this record, where DPSS sent ICWA notices to five tribes based on the varied tribal descriptions that father used on several occasions, we find that father's statements about "Dakota Native American" ancestry did not constitute new information requiring further inquiry by DPSS.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

RAMIREZ_____
P. J.

McKINSTER_____
J.

10