Filed 6/27/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH PATRICK REED,<br><br>　　Defendant and Appellant. | A168358, A168368<br><br>(San Francisco City & County<br>Super. Ct. Nos. CT22000854,<br>CRI2527813) |

Joseph Patrick Reed challenges the trial court's orders revoking his three-year term of parole and remanding him to the custody of the California Department of Corrections and Rehabilitation (CDCR).

Reed raises two issues on appeal: (1) whether the trial court erred by finding he violated the conditions of his parole; and (2) whether it erred by remanding him to CDCR custody pursuant to Penal Code section 3000.08, subdivision (h), a mandatory remand provision applicable to, as relevant here, parolees subject to a lifetime period of parole under section 3000.1.[1] We conclude there was no abuse of discretion in finding Reed violated his parole. However, we find the trial court erred in remanding Reed to CDCR custody

---

\*　　Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of section I. Substantial Evidence Supports the Parole Violation Findings.

[1]　　All further statutory references are to the Penal Code.

1

as his parole term had been reduced to three years prior to the parole revocation and, therefore, he was not subject to section 3000.1.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, Reed was convicted of second degree murder (§§ 187, 189, subd. (b)) and sentenced to 16 years to life with the possibility of parole. In 2016, Reed was released on parole for the first time. He absconded supervision and his parole was revoked in 2017.

On June 16, 2021, Reed was released on parole for a period of three years. While Reed was previously subject to lifetime parole under section 3000.1, the maximum period of parole for his parole term that began in 2021 was reduced to three years by the 2020 enactment of section 3000.01, subdivision (b)(2).

In September 2021, CDCR filed a petition to revoke Reed's parole (2021 petition), alleging he both committed felony reckless evading and traveled more than 50 miles from his residence without the prior approval of his parole agent. In January 2022, and while the 2021 petition was still pending, CDCR filed an additional petition to revoke Reed's parole (2022 petition) based on his voluntary admission to using cocaine.

In December 2022 and June 2023, the trial court held revocation hearings on the two petitions where the following testimony was proffered.

*2021 Petition*

California Highway Patrol Officer Brian Evans testified he observed Reed's car speeding on a highway in Humboldt County on September 1, 2021 at approximately 1:15 a.m. Evans confirmed by radar the car was traveling at 89 miles per hour and activated his emergency lights. After the car stopped, Evans instructed the driver over the loudspeaker to pull over in a safer location. Instead, the car accelerated to 90 miles per hour and Evans

2

pursued, chasing the car for 25 minutes as it reached speeds of up to 124 miles per hour. Evans called for backup and a roadblock was staged; upon approaching the roadblock, Reed jumped out of the driver's seat while the car he exited was still moving. Evans did not observe any movement in the car or anyone inside switch places before Reed jumped out. Reed attempted to escape on foot but was ultimately arrested. In a post-*Miranda* statement, Reed told Evans he engaged in the chase and ran because he was on parole and outside of his 50-mile radius. (*Miranda v. Arizona* (1966) 384 U.S. 436.)

Eddy Yee, Reed's parole agent, testified that Reed is from Humboldt County and a member of the Yurok Tribe, but he was paroled to San Francisco to participate in a transitional housing program. A condition of Reed's parole barred him from traveling outside of a 50-mile radius of his residence without prior approval.

Yee further testified that Reed had obtained approval to spend the night of August 31-September 1, 2021, the night of the chase, in Santa Rosa (not in the transitional housing location) with his wife. He did not request or receive approval to go to Humboldt. The day after the car chase, Reed told Yee his wife had been driving the car and they were in the Humboldt area attempting to locate a missing granddaughter. Parole policy provides an exception to the requirement for prior approval to travel when " 'exigent circumstances exist.' "

The Honorable Abby Abinanti, Chief Judge of the Yurok Tribe, testified as an expert on the issue of missing and murdered indigenous people (MMIP). Judge Abinanti explained indigenous people are disproportionately murdered and California is fifth in the nation for murdered and missing native women. Among the Yurok Tribe, there is a longstanding mistrust for law enforcement and a belief they will not help find missing family members.

Therefore, Yurok families regularly search for their own missing persons rather than report it to law enforcement and it would not surprise her if one would violate parole to search for a missing family member.

Reed's wife, Krista Reed, stated she is a member of the Tule River Yokut Tribe.[2] She testified their teenaged granddaughter had a history of running away. A report was filed after one such instance, but the police did not investigate and instead blamed the family. On August 31, 2021, Krista picked up Reed as he had a pass to spend one night with her in San Rafael. At that time, their granddaughter had again run away but she did not call the police for help because law enforcement had threatened to take her grandchildren away from her daughter after her granddaughter was previously reported missing, and because of Krista's experience with police inaction when Native Americans go missing.

Reed was in the backseat of the car and Krista was driving when she got a call that their granddaughter was seen in Eureka. Krista decided to find her and began driving to Humboldt County; she did not tell Reed because he was tired, and she did not think about the 50-mile radius. She testified she had not been speeding when she saw a police car activate its lights and pull behind her car. She pulled over, then the police told her (through a speaker) to pull over to a safer spot. Krista panicked because she did not have a driver's license, did not want Reed to get in trouble for being outside of the radius when it was her fault, and wanted to look for her granddaughter. Instead of pulling over as directed by the police, she drove away and kept driving, despite Reed asking her to pull over. Krista slowed

_____

[2] For ease of comprehension and meaning no disrespect, we refer to Krista Reed by her first name.

4

down as they approached the roadblock, at which point Reed jumped over her, the door opened, and he fell out of the car.

*2022 Petition*

Yee, the parole agent, testified Reed had a history of substance abuse and was therefore required to participate in narcotics testing as a condition of parole. On January 20, 2022, after receiving a report from the transitional housing program that Reed had refused to take an antinarcotics test, Yee and two other parole agents went to the transitional housing location to conduct a contraband search of Reed's room and administer an antinarcotics test on Reed. That test was presumptively positive for cocaine. Reed then signed a voluntary statement of admission stating he had used cocaine, and explained to Yee he had taken a drag from a co-worker's cigarette that was apparently laced with cocaine.

On cross-examination, Yee stated he filled out the voluntary statement of admission form and Reed signed it. Although Reed had told Yee he did not know the cigarette contained cocaine and did not intend to ingest it, Yee did not include that information on the form. Reed had been successful in his transitional housing program in the months leading up to the cocaine incident, and all his drug tests during that period had been negative.

*Trial Court's Ruling*

After the hearings on both petitions, on June 30, 2023, the trial court found the violations of parole in both petitions had been proven by a preponderance of the evidence. The court revoked Reed's parole and remanded him to the custody of CDCR.

As to the 2021 petition, the court noted it was undisputed that Reed was outside of his 50-mile radius and that, even if Reed believed there was an exigent circumstance, he made no effort to contact parole. The court found

5

Evans's testimony credible as to the driver's reckless driving during the chase. The court noted Evans did not know who was driving the car during the first part of the chase, but it credited Evans's account that, at least by the end, Reed was driving the car based on his jumping from the driver's door. It did not find credible Krista's testimony that Reed jumped over her out of the car. While crediting Krista's concern for and desire to locate her granddaughter, as well as the lack of faith among indigenous people that police would help, the court found Reed's actions amounted to a violation of parole. Regarding the 2022 petition, the court found that Reed had ingested and used cocaine based upon the testimony that Reed tested positive for cocaine and the testimony overall.

The court found Reed violated his parole and ordered him remanded to CDCR custody and the jurisdiction of the Board of Parole Hearings (BPH) for purposes of future parole consideration pursuant to section 3000.08, subdivision (h). Reed appealed.

## DISCUSSION

Reed challenges the revocation of his parole on two grounds. First, he argues the court's findings that he violated the conditions of his parole are not supported by substantial evidence. Second, he contends that the trial court erred in remanding him to the custody of CDCR pursuant to section 3000.08, subdivision (h). We address each issue in turn.

## I. Substantial Evidence Supports the Parole Violation Findings

Reed contends insufficient evidence supports the court's findings that he violated the conditions of his parole as to both the 2021 and 2022 petitions. We conclude the court did not err as to either petition.

A parole violation must be proved by a preponderance of the evidence. (§ 3044, subd. (a)(5); see *In re Miller* (2006) 145 Cal.App.4th 1228, 1234–

6

1235.)  We review an order revoking parole for abuse of discretion and review the court's factual findings for substantial evidence.  (See *People v. Butcher* (2016) 247 Cal.App.4th 310, 318; see also *In re Miller*, at p. 1235 ["Parole revocation and probation revocation after the imposition of a sentence are constitutionally indistinguishable."].)  "[O]ur review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision.  In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment.  Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.)  We do not reweigh credibility as it is the exclusive province of the trier of fact to determine witness credibility and resolve conflicting evidence.  (*People v. Mumin* (2023) 15 Cal.5th 176, 202 (*Mumin*).)

To revoke parole, the evidence must support the conclusion the violation of the terms of parole was willful.  (See *People v. Galvan* (2007) 155 Cal.App.4th 978, 982 [evidence of willful violation of terms of probation required for probation revocation].)  "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act . . . .  It does not require any intent to violate law." (§ 7, subd. (1).)

## A.  2021 Petition

Reed does not contest he was outside the permissible 50-mile radius or that there was reckless driving.  Instead, he grounds his appeal on whether there was sufficient evidence for the court to find no exigent circumstances excused his actions.  We are not persuaded.

7

The trial court's findings were largely based upon its determination of the credibility of the witnesses before it. (See *Mumin*, *supra*, 15 Cal.5th at p. 202 [it was up to the trial court to weigh conflicting evidence].) While the court did not determine who was driving before the car was first pulled over, the court credited the testimony that it was *Reed* who got out of the driver's door after the second part of the chase ending with the roadblock. And the court did not find exigent circumstances. As the court noted, Reed made no effort to contact parole to explain why he was outside of the 50-mile radius. And Evans testified that—*immediately after the incident*—the sole reason Reed provided for attempting to evade the police was that he was outside of his permissible 50-mile radius, with no mention of the search for his granddaughter. While the court found credible Krista's concern for her granddaughter and her lack of faith in law enforcement, the record supports its finding that her testimony did not justify Reed's reckless driving or his being outside the 50-mile radius limit.

Hence, there was clearly substantial evidence to support the court's finding. (*People v. Kurey*, *supra*, 88 Cal.App.4th at pp. 848–849.) Accordingly, the trial court did not abuse its discretion by failing to find that exigent circumstances excused Reed's undisputed violations of parole.

**B. 2022 Petition**

Reed asserts there is insufficient evidence to support the court's finding that he violated parole by using cocaine because the was no evidence that his cocaine use was willful. We disagree.

While Reed asserts the "only evidence presented" that he willfully ingested cocaine was his statement that he did not intend to do so, the court specifically relied on Yee's testimony that Reed tested positive for cocaine and admitted to ingesting it. The court was also presented with evidence that

8

Reed signed a voluntary statement of admission stating he had used cocaine. It was for the court as the trier to fact to choose whether to credit Reed's statement, made to Yee and testified to by Yee, that Reed did not know the cigarette he smoked had been laced with cocaine. We defer to the court's assessment. (See *Mumin*, *supra*, 15 Cal.5th at p. 202.)

We therefore conclude the court did not abuse its discretion in finding that Reed willfully committed the act of ingesting cocaine (see § 7, subd. (1)) and revoking Reed's parole.

## II. The Trial Court Erred by Remanding Reed to CDCR Custody

Section 3000.08, subdivision (h) provides for mandatory remand to CDCR custody when, as relevant here, a person on lifetime parole under section 3000.1 is found to have violated parole. The parties agree that, although Reed was previously subject to lifetime parole under section 3000.1, the maximum period of parole for his second parole term that began in 2021 was reduced to three years by the 2020 enactment of section 3000.01, subdivision (b)(2). As his parole term was limited to three years by section 3000.01 when the court found him in violation of parole, Reed contends the court erred in remanding him to the custody of CDCR pursuant to section 3000.08, subdivision (h) given that he was no longer subject to lifetime parole under section 3000.1. Reviewing this issue of statutory interpretation de novo (*People v. Wilson* (2021) 66 Cal.App.5th 874, 878 (*Wilson*)), we agree.

" 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts

9

must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Wilson*, *supra*, 66 Cal.App.5th at p. 878.)

## A. Legal Framework

Historically, responsibility for parole revocation rested with the BPH. (*People v. DeLeon* (2017) 3 Cal.5th 640, 647.) In 2012, the Legislature amended section 1203.2 to incorporate parole into the statutes governing revocation of other types of statutory supervision, shifting jurisdiction over most parole revocation petitions to the superior courts. (*Ibid*.) "Currently, sections 1203.2 and 3000.08 establish the statutory framework for parole revocation proceedings." (*Department of Corrections & Rehabilitation v. Superior Court* (2023) 94 Cal.App.5th 1025, 1036.)

Upon a finding that a parolee has violated the conditions of parole, a trial court generally has the discretion to modify or revoke parole, including the authority to sentence the person to county jail for up to 180 days, or refer the person to a reentry court or other evidence-based program. (§ 3000.08, subds. (f) & (g).) However, "once a court finds that a *lifetime parolee* has violated conditions of parole *or* the law, a special rule applies" and those options " 'do not exist.' " (*Department of Corrections & Rehabilitation v. Superior Court*, *supra*, 94 Cal.App.5th at pp. 1036–1037, some italics added.)

In such cases (lifetime parole), section 3000.08, subdivision (h) is triggered, which requires the court to revoke parole and remand the parolee to CDCR custody: "Notwithstanding any other law, if Section 3000.1 . . . applies to a person who is on parole and the court determines that the person has committed a violation of law or violated his or her conditions of parole,

10

the person on parole shall be remanded to the custody of [CDCR] and the jurisdiction of the [BPH] for the purpose of future parole consideration."[3] (§ 3000.08, subd. (h); see *People v. Williams* (2021) 71 Cal.App.5th 1029, 1040, 1042.)

Section 3000.1, in turn, sets out a term of lifetime parole for two groups of inmates: (1) those "sentenced under Section 1168 for any offense of first or second degree murder with a maximum term of life imprisonment"; and (2) certain sex offenders sentenced to a life term. (§ 3000.1, subd. (a).) Section 3000.1 was last amended in 2014. (Assem. Bill No. 1438, Stats. 2014, ch. 280, § 2.)

In 2020, the Legislature passed Senate Bill No. 118, which implemented section 3000.01. (Sen. Bill No. 118, Stats. 2020, ch. 29, § 18 (S.B. 118).) Section 3000.01 governs the periods of parole for persons who are subject to supervision under section 3000.08 and were released from state prison on or after July 1, 2020. (§ 3000.01, subd. (a); *People v. Tilley* (2023) 92 Cal.App.5th 772, 779 (*Tilley*).)

As relevant here, section 3000.01—"[e]xcept as provided in subdivision (d) and notwithstanding any other law"—limits parole terms to three years for inmates serving a life sentence. (§ 3000.01, subd. (b).) Subdivision (d) sets out only two exceptions, neither of which are applicable to the case before us: (1) if the underlying offense requires registration as a sex offender; and (2) if the parole term at the time of the commission of the offense was shorter than the terms in subdivision (b). (§ 3000.01, subd. (d).)

---

[3] The mandatory remand-to-CDCR-custody provision also extends to certain sex offenders subject to a parole term of 20 years and six months. (§ 3000.08, subd. (h); see § 3000, subd. (b), par. (4).)

11

With this legal framework in mind, we turn to the merits of Reed's claim.

## B. Section 3000.01 Renders the Mandatory Remand-to-CDCR-Custody Provision Inapplicable to Reed

The question we must answer is whether section 3000.1 applies to Reed after the enactment of section 3000.01; if the answer is no, the mandatory remand-to-CDCR-custody provision in section 3000.08, subdivision (h) is also inapplicable.

Section 3000.01 states that it applies "notwithstanding any other law," which suggests the Legislature intended this section to take precedence over any conflicting provisions. (§ 3000.01, subd. (b); see *In re Greg F.* (2012) 55 Cal.4th 393, 406.) It is true that, "despite adding section 3000.01 limiting the parole term for those released from prison on or after July 1, 2020, the Legislature did not amend the relevant provisions" of statutes that provide for longer parole terms, such as sections 3000, 3000.08, and 3000.1. (See *Tilley*, *supra*, 92 Cal.App.5th at pp. 779–780.) But while "[t]hese statutory inconsistencies put trial courts in a bit of a conundrum when advising of the parole term," every appellate court to consider the issue has concluded the term limits in section 3000.01 override conflicting preexisting provisions. (See *Tilley*, at pp. 779–780; *People v. Tan* (2021) 68 Cal.App.5th 1, 4–6 [modifying judgment to reduce parole term of appellant to the permissible maximum "under the plain language of section 3000.01"].) We therefore find that section 3000.01 applies to Reed notwithstanding the contrary provisions in section 3000.1.

The Attorney General concedes that section 3000.01 operated to reduce the length of Reed's parole term to three years but argues that "does not change whether section 3000.1 applies to [Reed] for purposes of statutory

12

remand." We disagree and reject the Attorney General's suggestion that section 3000.01 does *not* conflict with section 3000.1 for parolees like Reed, i.e., those sentenced to life for murder who were released on parole on or after July 1, 2020. For such persons, the two statutes impose conflicting terms of parole. (Compare § 3000.1, subd. (a)(1) [lifetime term] with § 3000.01, subd. (b)(2) [three-year term].) Hence, only one of the two statutes can control, and the Legislature signaled its intent for the later-enacted statute— section 3000.01—to preempt the conflicting, preexisting statute by including "notwithstanding any other law" in section 3000.01, subdivision (b). (See *In re Greg F.*, *supra*, 55 Cal.4th at p. 406.) Accordingly, we conclude section 3000.1 does not apply to Reed.[4]

Importantly, the Legislature created two express exemptions to the provisions of section 3000.01, for registered sex offenders and those with shorter parole terms.[5] (§ 3000.01, subd. (d).) If the Legislature intended to create an additional exemption for those convicted of murder with a maximum term of life imprisonment, like Reed, it could have done so. (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635–636 (*Lopez*) [" 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.' "]; see

---

[4] Contrary to the Attorney General's assertion that embracing this reading of section 3000.01 would render the other provisions of section 3000.1 "a nullity," those provisions continue to apply to those with lifetime parole (to the extent provided by the statute) who are exempt from section 3000.01, or whose parole terms began before July 1, 2020. (See § 3000.1, subds. (b), (c), & (d)); § 3000.01, subds. (a) & (d)(1).)

[5] The exemption for registered sex offenders overlaps in part with one of the two groups covered by section 3000.1, subdivision (a). (§ 3000.1, subd. (a)(2); § 3000.01, subd. (d)(1).)

also *People v. Frahs* (2020) 9 Cal.5th 618, 634 ["[W]e are mindful that the Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.' "].) While "the *expressio unius* inference properly arises only when there is reason to believe a legislative omission was intentional, such as when the statute contains a 'specific list,' " the Legislature created such a list here by specifically excluding registered sex offenders and those with shorter parole terms. (See *Lopez*, at p. 636; § 3000.01, subd. (d).)

We note that the legislative history of S.B. 118 shines little light on the intended effects of section 3000.01 other than to highlight that the statutory changes do not apply to those required to register as a sex offender.[6] (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of S.B. 118, as amended Jul. 29, 2020, pp. 3–4.) This further supports our reading that the Legislature was aware of its power to carve out exceptions but limited its exercise of that power. Without any clear legislative intent contradicting the plain language of the statute, "[w]e will not create an exception the Legislature did not enact." (See *Lopez, supra,* 5 Cal.5th at p. 636.) Nor does the Attorney General offer any argument that giving effect to the plain terms of the statute would result in absurd consequences. (*Wilson, supra,* 66 Cal.App.5th at p. 878.) If the Legislature did not intend this result, it has the power to amend the relevant statutes accordingly.

We therefore conclude that, in light of section 3000.01, the provisions of section 3000.1 do not apply to Reed. Given that, by its plain language, the mandatory remand-to-CDCR-custody provision (§ 3000.08, subd. (h)) is

---

[6] The parties did not provide the legislative history. On our own motion, we take judicial notice of the legislative history of S.B. 118 (see *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1542, fn. 9), specifically all versions of the bill and the Committee and Floor Analyses.

triggered "if Section 3000.1 . . . applies," we further conclude section 3000.08, subdivision (h) does not apply to Reed.  Therefore, the trial court erred by remanding Reed to the custody of CDCR and the jurisdiction of the BPH pursuant to section 3000.08, subdivision (h).  Since section 3000.08, subdivision (h) was not applicable to Reed, once he was found in violation of parole it was for the trial court to modify or revoke parole pursuant to its authority as set forth in subdivisions (f) and (g).

In closing, we note that while a parolee who is no longer subject to mandatory remand under section 3000.08, subdivision (h) may be punished only as provided in subdivisions (f) and (g) *for any parole violation*, the legislation discussed in our opinion in no way alters or limits the ability of the appropriate prosecuting agency to seek new criminal charges predicated upon the conduct that led to the violation of parole.

## DISPOSITION

We affirm the trial court's findings that Reed violated parole but reverse the court's orders remanding Reed to the custody of CDCR and the jurisdiction of the BPH.  We remand for further proceedings for the court to determine what penalties to impose for Reed's violations of parole, as provided by section 3000.08, subdivisions (f) and (g).

15

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Rodríguez, J.


A168358/A168368 – *People v. Reed*

16

Trial Court:        San Francisco County Superior Court

Trial Judge:        Hon. Russ Roeca

Counsel:            Rob Bonta, Attorney General, Lance E. Winters, Chief
                    Assistant Attorney General, Jeffrey M. Laurence, Senior
                    Assistant Attorney General, Seth K. Schalit, Supervising
                    Deputy Attorney General, and Matthew J. Eitelberg,
                    Deputy Attorney General, for Plaintiff and Respondent.

                    First District Appellate Project, Kaiya R. Pirolo, for
                    Defendant and Appellant.